Parker, C. J.
The conveyances and assignments were, on the face of them, absolute and unqualified; so that, if a trust was intended, it was of a most confidential nature, and exceedingly difficult of proof, if the trustee had chosen to stand upon his strict legal rights, and to refrain from any subsequent act, which might show the true character of the transaction.
I" * 223 ] * But it seems to be settled, by authorities cited at the bar, that any declaration in writing, made by the grantee or assignee of property, at any time after the conveyance, is competent proof that the property was to be holden in trust according to the terms of such declaration, within a fair and liberal construction of the statute of frauds; and that letters or other papers, however informal, are sufficient to constitute such declaration. According to this principle, we must consider the expressions used in the pamphlet published by Joy, in answer to one previously published by the complainants, as amounting to an acknowledgment that the estates and property, which he received from Harrell, were intrusted to him for certain purposes ; and that he was accountable to Harrell for a just distribution of them, and for any balance remaining after the purposes of the trust were fully answered (1).
We should be sorry, however., to rely altogether upon evidence of this nature, for the decision of so important a question of property as is now before us. The pamphlet was undoubtedly composed in a state of mind, which might occasion inaccuracies and hasty admissions •, for it appears to have been written in defence against charges, supposed to be harsh and unjust, which had been published and extensively circulated by the complainants (2).
On this subject we think it our duty to observe, that appeals to the public upon controverted questions of property, if recourse to law is intended, should always be discountenanced. If they have *189 any effect, it is to excite a popular prejudice upon the question; and every one, conversant in courts of justice, knows how injurious to the cause of truth and right it is, to have opinions formed, or even a tendency to them created, in any other way than by evidence in open court. Such publications pending a suit may be punished as a contempt of court. If, when made before an action is commenced, with a view to have effect upon a contemplated suit, they are beyond the animadversion * of the law; the [ * 224 ] legislature should provide a remedy for so palpable a mischief. It has been said, however, on behalf of the complainants, and undoubtedly with truth, that when their pamphlet was published, they had no expectation of resorting to any legal tribunal for redress ; believing themselves without remedy, unless they could obtain it, by the aid of public opinion, from the respondent’s own concessions. The observations upon this subject have therefore been made, rather with a view to warn others against a dangerous abuse of the right oí complaint, than as a reprimand of the conduct of the complainants.
But there is in the case much more satisfactory evidence of the accountability of Joy as trustee, than any which can be derived from confessions extorted by a direct call upon him to answer before the public, for an alleged breach of trust and moral duty. The inden turc made in October, 1799, furnishes conclusive evidence that, notwithstanding Joy’s legal title to the property therein described, there was a beneficial interest remaining in Ban-ell. For it cannot otherwise be accounted for, that Joy should have consented to appropriate the proceeds, after satisfying his own debt, to the payment of the large demand of Jones, Jeffrey and Russell, against Barrell. The ten- or, as well as the effect, of that indenture shows very clearly, that Joy had taken an assignment of the property solely with a view to secure himself an indemnity, for his advances on account of Bar rell; and that it was intended and expected by the parties that, when Joy was indemnified, either by payment, or by the proceeds oí the property on a sale, Barrell’s right, to the estates, or to the residue of the proceeds, should revert to him. This is a sufficient declaration in writing; for although not made to Barrell, it is available to him or his representatives.
This point being settled, the next general inquiry is, Of what nature and character is the trust; and in what * man- [ * 225 ] ner, and to what extent is the trustee liable ? Is he to be regarded with that jealousy, with which some of the authorities cited for the complainants say a trustee is to be watched ; so that all doubtful points are to be decided against him, all losses thrown upon him, and all gains taken from him ? Or is he to have a candid and liberal allowanci applied to his conduct; so that, if he has acted *190 honestly and with common discretion, he shall be indemnified against losses, and be reasonably compensated for the time, trouble and expense which may have attended the execution of his trust ?
We are entirely satisfied that thetrust under consideration is of the latter character, and that the respondent’s account is to be settled accprding to these principles. The original design of the • trust, and the circumstances under which it was undertaken, are to be considered. The evidence authorizes the opinion, that it was in some measure forced upon Joy. Barrell had become exceedingly embarrassed, was vexed with some suits, and threatened with others. The speculations he had unfortunately entered into, had swallowed up his property, and left him still greatly in debt. The property for which he had thus hazarded all his estate, was of little or no actual value. Joy had property and credit, and he embarked both in aid of Barrell; and the latter made over his w'hole estate to Joy without any stipulation in writing tending to limit or qualify the ef feet of the conveyance, or any direction in writing from the grantor, or any agreement on the part of the grantee, tending to restrict him in the use of the property, or to dictate the time when, or the manner how, he should dispose of the estates. There was undoubtedly an understanding that the property should be holden by Joy, to secure and indemnify him. But he had by implication the most unlimited power and authority over it; his own discretion being his only guide in the disposition of it. Under such a trust as this, nothing short of fraud, or such gross negligence as would be [ * 226 ] inconsistent * fairness, ought to burden the trustee with any loss upon the property (3).
It seemed to have been the opinion of the trustee, and also of the vestid que trust, that the property assigned was of such a nature as to forbid any efforts to convert it into money for many years. For five years after the assignment, Barrell himself seems to have acquiesced in the conduct of Joy; without doubt entertaining hopes of a future rise of the property, and believing it to be for his interest that no sale should take place, until a more favorable opportunity occurred.
Considering, then, the circumstances of the property, the absence of all direction, and even of any request, during the life of Barrell, to expedite a sale of it; and his necessary knowledge of the accumulating expense upon it, by the interest on his debt or otherwise; we are satisfied that it was .intrusted to Joy with the broadest discretion, and with an entire reliance that, from regard to his own interest, if *191 not to the interest of Barrell and his family, he would manage it in the manner most likely to promote the interest of all concerned.
This is a species of trust, to which the rules of chancery, which have been cited, do not apply. The trustee here is the principal cestui que trust himself; and his interest in the estate was paramount to that of any other person. There is no analogy between such a trust, and one created for the benefit of persons incapable of taking care of their own interest; such as infants, persons non compos mentis, femes covert, and others. In such cases the temptation to waste or misapply the property is properly guarded against by exceedingly strict rules. But here the trustee himself is most interested to make the most of the property, and the cestui que trust was fully capable of looking out for his own interest, and voluntarily committed his estate to the honor and discretion of the trustee.
We think, then, that we are to inquire whether, m the management or disposal of the fund, there is any evidence *oi fraud or gross negligence, so as to charge the trustee with the [ * 227 ] value of any part of it which may have been lost. Fraud has not been imputed. Negligence has been charged in several particulars, which shall be mentioned.
[Here his honor went into an examination of the distinct charges made by the complainants; and having found no legitimate ground of complaint in this regard, proceeded.]
We are also to consider what allowances are to be made to Joy from the estate, for which he is thus accountable.
There is no reason why he should not be allowed interest upon his debt, in the common way of computing interest in this Court. Though there have been many good reasons stated, for allowing compound interest, yet as far as it is applicable to the debt due from Barrell, we do not feel ourselves at liberty to depart from the settled practice in this particular.
As to all moneys advanced by the trustee, to preserve the property from waste, or to secure the title to it, a different rule may be applied. There is no reason why a man should be obliged to raise money to protect property placed in his hand for security, at a loss to h'mself; and it must be so, if for this purpose he resorts to banks, or to other usual modes of raising money upon his credit. He has to pay at least compound interest in such negotiations ; and when he is restricted, from the nature and situation of the property pledged, from selling it, and at the same time is obliged to advance money to keep it in good order, he will be a sufferer, if limited to simple interest, which will by no means give him an indemnity (4).
*192 In suits for debts at common law, this mode of computation is rejected ; because it is in some measure the fault of the creditor to suffer his debt to lie over beyond the time of payment. The case of a trustee, obliged to advance money upon property pledged for security of his debt, is different; and the court of chancery [ * 228 ] in England has * allowed or disallowed compound interest, according to the justice of each particular case (5).
Thus in 1 jBrown’s Chancery Cases, 440, the tenant for life of a leasehold estate, who had paid money for a renewal of the lease for a longer period, was allowed compound interest upon the money paid; because it was for the interest of the reversioner that the lease should be renewed; and because compound interest was taken into the calculation by the lessors, in fixing the price to be paid for the lease. And, on the other hand, in 11 Vesey, jun. 92, there is a case, where a trustee was charged compound interest, making the interest a, part of the capital semi-annually; because, by the terms of the trust, he was to derive no advantage from keeping the money in his hands; a compensation for executing the trust having been given to him by the will.
In stating the account, therefore, Joy is to be allowed interest at the compound rate, making a rest in the accounts annually, and carrying the interest into the capital; §o as to give him interest upon interest on all sums appearing to have been paid to redeem any of the property from prior pledges, for counsel fees, and for other expenses incident to the property; and simple interest, according to the usual mode of computation, upon the residue of his accounts.
There remains but one consideration, and that is, whether any, and if any, what allowance shall be made to Joy, for his care and management of the property, and for the anxiety and trouble attending it for the long period of time, during which he has had the property intrusted to him. It is probable that no compensation, which this Court could in their discretion order, would be thought equal to the peculiar trouble attending this trust. There is undoubtedly, in the execution of most trusts, much solicitude and vexation, which cannot be compensated by money; and any trustee must be supposed to understand this, when he takes upon himself such a burden. And it is for this reason, probably, that in Eng- [ * 229 ] land trustees are generally * allowed nothing; and the *193 same rule is applied to executors, who are considered as voluntarily accepting the trust. In this commonwealth, however, executors are allowed a reasonable compensation; and there is no reason why trustees should not be. Indeed it will probably be for the advantage of all, who are concerned in estates held in trust, that such compensation should -be made; as more care and diligence may be expected and required, where there is a compensation. But this must be graduated by the actual labor and service performed in each particular case, rather than by those inconveniences and vexations, which cannot be measured, and which do not always admit of satisfactory proof. We know of no better rule to guide our discretion in this particular, than the usage which exists among merchants, factors, and others, who undertake to manage the interests and concerns of others; and we think the highest rate, at which those services are usually paid for, ought to be allowed to Joy; considering him as having iaithfully executed his trust, and as having dealt with the property as prudently as could be expected, in the difficult circumstances in which he has been placed. Five per cent, therefore, upon the gross amount of all property which has come into his hands as trustee, is to be credited to him for his care and distribution of it

 [Hoxie vs. Carr, & Al. 1 Sumn. 175. Ed.]

 [This seems to be no reason why the admission may not be supposed to be true Ed.]

 [The denying the trust and claiming the whole under a conveyance, in terms ap patently absolute, but in fact made upon a certain trust, did not savor much of fail ness or honesty.—Ed .]

 [The trustee in this ease could only claim an indemnity, and ought not to be al *192 lowed compound interest, unless he could show that he was, in the discharge of his trust, obliged to pay it. -Evertson vs. Tappen, 5 Johns. Chan. 517. -Ed. ]

 Compound interest is only allowed in very special cases (State of Connecticut vs. Jackson, 1 Johns. Ch. C. 13. —Barrow vs. Rhinelander, 1 Johns. Ch. C. 550. -Schief flin vs. Stewart, 1 Johns. Ch. C. 620. —Van Benschoten vs. Lowson, 6 Johns. Ch. C. 314) and it is never allowed in favor of a trustee. —Evertson vs. Tappen, 5 Johns. Ch. C 517.