WILLIAM WRIGHT *vs.* ABRAHAM A. DAME & others.

K., being about to purchase land that was held in trust, made a contract with the trustee for the conveyance thereof, which contract in terms recognized the trust, and provided for its execution : K. subsequently required and received from the trustee and the *cestui que trust* a joint deed of the land, under circumstances which left it doubtful whether the purpose of such deed was to discharge the land from the trust : Afterwards, in an agreement between K. and the trustee for a resale of an undivided moiety of the land to the trustee, the terms of the first contract were recited, and were not declared to have been vacated : The *cestui que trust* after wards aided in the organization of a corporation, and in the passing of a vote au thorizing the purchase of said land by the corporation, without disclosing that he regarded the land as chargeable with a trust in his favor : The land was thereupon conveyed to the corporation, the sole members of which were the trustee, the *cestui que trust,* K. and his partners, who were affected with notice, and persons holding stock for the benefit of K. or his partners.

*Held,* that the recital and agreement of resale revived the trust, if it had been waived by the joint deed of sale, and confirmed it, if it had not been thereby waived.

*Held also,* that the trust was not waived, as to the corporation, by the conduct of the *cestui que trust,* but that the corporation took the land subject to the trust.

THIS was a bill in equity, in which the plaintiff sought to charge the defendants with the execution of a trust. (See for-mer proceedings in this case, in 22 Pick. 55. 1 Met. 237.) The facts of the case are fully set forth in the opinion of the court.

The argument was had at the last March term.

*Greenleaf & J. P. Rogers,* for the plaintiff.

*Bartlett & B. R. Curtis,* for the defendants.

HUBBARD, J. This case comes before the court on the amended bills and answers, and sundry depositions and proofs ; and the following appear to be the material facts upon which the questions arise, and which have been argued by the counsel in the case :

In the year 1826, sundry individuals, of whom the complain ant, Wright, was one, procured an act from the legislature, au-thorizing them to erect a free bridge from or near Sea Street to South Boston, where Wright lived. This movement brought the flats, lying on the line and in the vicinity of the contemplated bridge, before the public as an object of valuable speculation, into which the complainant entered ; and through the aid of N. R. Cobb, of the house of Freeman, Cobb & Co., (and having an un·

41 *

derstanding with Dame to become interested therein,) he made the bargain for the flats which are the subject of the present controversy. At the time when the purchases were completed, in May 1827, he received from Cobb the means of paying the purchase money, and Cobb also agreed to make further advances to enable him to fill up the flats and make them saleable for building lots. For the purpose of interesting Dame in the purchase, and to secure his name and joint coöperation in the business, the complainant made a conveyance of an undivided half of the premises to Dame, and they, on the same day, joined in a conveyance of them to Cobb, by two mortgage deeds to secure the money advanced for the consideration of the land, and to supply the means for filling up the flats. About the same time, an obligation was also given to one Thomas Kendall, in consideration of services rendered in regard to the purchase of the property, and for future advice and supervision concerning the filling up of said land and making sales thereof, to account with him, on the close of the speculation, for one fifth part of the net profits. Under these arrangements, the parties, Wright and Dame, went on expending large sums of money in filling up the flats, a part of which money appears to have been supplied by Dame from his own resources, and a part from Cobb, who gave them assistance, from time to time, taking security on the property. The parties being disappointed in not making sales as they expected, and Wright, being apparently considerably indebted to Dame, for the purpose of giving him security, conveyed to Dame his undivided half of the premises, by deed of release and quitclaim bearing date September 29th 1829, and subject to the outstanding mortgages in favor of Cobb. At the same time, they entered into an agreement, by which the trusts were set forth under which Dame was to hold the estate ; one of which was, that Dame should not sell any part of it without the written consent of said Wright, until after the 1st day of May 1832 ; at the end of which time, as much of the land and property, so released by said Wright to said Dame, as should be necessary for the payment of all debts due from said Wright to said Dame, and of all moneys which said Dame might have paid

or should thereafter pay to said Cobb and the Boston Free Bridge Corporation, on said Wright's account, and all taxes and expenses incurred on said property, with interest thereon half yearly, should be sold in suitable house or store lots, and the same should be disposed of at public auction. And it was also further agreed, that the proceeds of the sales should be applied to the payment of any just and lawful claims or demands which said Dame might have against said Wright, and also for the payment of any sum or sums which said Dame might have or should have advanced towards said Wright's half part of the expenses and cost of the improvements, made by said Wright and said Dame on said premises ; and also for the payment of any sum or sums which said Dame might have advanced for said Wright, to pay his subscription or assessment to the Boston Free Bridge Corporation ; and also for the payment of any sum which said Dame might be liable for and pay, on account of said Wright, to said Cobb. And no more of said premises were to be sold than what might be necessary to pay the amount due from said Wright to said Dame, and for said Dame's liabilities as aforesaid, and the interest thereon half yearly, and all taxes and expenses incurred on said property, during said term. And the residue of said premises, if any, were to be reconveyed by a deed containing covenants of warranty against all claims and incumbrances by said Dame, his heirs or assigns, to said Wright by said Dame, on demand, after the several claims and demands should be paid as aforesaid ; and said Dame was not to institute or cause to be instituted, or suffer any suit to be instituted, against said Wright, during said term ending May 1st 1832, or on any claim or demand which he might now have against him. And it was understood that Dame was to credit Wright for his share of the rents and profits of the land and estates held by said Dame under the agreement.

After the time arrived, specified in the contract, and when Dame was authorized to make sale of the estate, a sale could not be effected advantageously. A project was soon after started, among persons interested in the surrounding flats, to procure the termination of the Boston and Worcester Rail Road

somewhere on the flats west of Sea Street ; and, to promote it, a joint stock company or corporation was proposed, in which all the flats might be embraced, including those owned by said Wright and Dame ; and in consideration of this, an authority was given by Wright to Dame, to put any part or the whole of said flats, westerly of Sea Street, into a joint stock company or corpora-tion, on the terms specified in an instrument executed by said Wright under the date of October 1st 1832.   And in January 1833, the South Cove Company was incorporated.  But no agreement was made under it in regard to the Wright and Dame flats.   It, however, probably led to the act which said Wright and Dame afterwards obtained, on the 1st of April 1834, incor-porating them and their associates as the South Wharf Corpora tion ; by virtue of which, authority was given to purchase the said property and to hold the same in shares, as a body corpo-rate ; the object being to enable them to dispose of the property, under said powers, to better advantage.   Just before this time, (March 27th 1834,) said Wright and Dame being pressed by Cobb for part payment of the moneys advanced by him, pro-cured from Dr. G. C. Shattuck $ 15,000, on mortgage of a part of the premises lying east of Sea Street, which was paid over to said Cobb.   The said Cobb, then being in a feeble state of health, on or about the 2d of May 1834, conveyed to H. S. Kendall and Charles L. Roberts, two of his partners, all his interest in said lands, together with his notes, mortgages, claims and demands upon said lands, and upon Wright and Dame, jointly and severally, and shortly afterwards died :  And in the following July, Roberts released his interest in the same prop-erty to said H. S. Kendall.   After this, no facts of importance, touching the case, are stated, till about the month of July 1835, when a negotiation took place between said Kendall, the as-signee of Cobb's interest, and Dame, for the purchase of the whole property.   This led to a further agreement between Wright and Dame, which bears date July 7th 1835, in which, after reciting in part the indentures of September 29th 1829, and referring to a proposition then made to buy the same lands, it went on to authorize Dame to sell the whole of the estate at private

sale, for the most he could obtain over $ 170,000, but not for a less sum ; and the authority thus given was on the express condition, that Dame should appropriate the proceeds so far as to cancel the debts, demands and liabilities therein referred to, and the residue of Wright's interest in said property, as secured to him by said agreement, should, instead of a reconveyance of land, as therein provided, be *paid to him by said Dame, in money or other satisfactory security on demand* ; and it was also provided, that any failure on the part of said Dame to perform his obligations to said Wright, as expressed in this agreement, should operate to exonerate said Wright from any obligation to abide by the authority therein given to said Dame relative to the disposition of said land and estate at private sale.

Two days after this, viz. on the 9th of July 1835, Dame and the said H. S. Kendall entered into an agreement, by which Dame agreed to sell the estate to Kendall, with certain reservations not necessary to be mentioned, and also referring to the mortgages of Cobb and Shattuck, which were to be assumed and paid by said Kendall, and the amount thereof allowed by Dame as a part of the purchase money ; and Dame was to convey the same title and interest in said estate which was conveyed to said Wright, warranting against all persons claiming by, from or under him or said Wright ; and said Kendall agreed to give said Dame, for said estate, the sum of $ 170,000, payable as follows : " To assume and pay said mortgages, *and the balance, so far as one moiety thereof, to pay in cash or such security as shall be satisfactory to said Wright* ; and as to the balance, by notes and mortgages of said estate on demand, or on such time and times as shall be mutually agreed on, and on interest." And in the same instrument, Dame acknowledged to have received the sum of $ 700 in part consideration for said estate.

On the making of this agreement, Kendall consulted his counsel — being the same whom he and Cobb had been in the habit of advising with — who was acquainted with the previous conveyances which existed between Wright and Dame ; and he advised him, for the purpose of cutting off and extinguishing all trusts and rights of every sort, and to obtain a title free from

all incumbrances, liens or trusts, to require and receive from
Wright and Dame their joint deed of the property, to be signed
by their wives.   In consequence of this advice, Kendall required
the joint deed of Wright and Dame to himself, with release of
dower ; and on the same 9th of July, Wright and Dame exe
cuted to Kendall their joint quitclaim deed of the premises, and
referring to the mortgages to be assumed by said Kendall, and
with covenants against themselves ; which deed was acknowl-
edged on the 10th of July, and recorded on the 8th of August
following.

Immediately after the signing of this deed, the following de-
claration was made by Dame, and annexed to the agreement
made between him and Wright, of the 7th of July 1835 :
" Having closed the above sale of the estate which I am author
ized, by the above contract, to dispose of, and the purchaser
thereof requiring the conveyance to be made jointly by my-
self and the abovenamed William Wright, and said Wright
having this day joined me in the execution of a deed of release
of said premises to H. S. Kendall ; therefore, I agree that the
execution of said deed by said Wright shall in no wise affect the
above agreement or the agreement of September 29th 1829
therein referred to."

No settlement of this contract took place between Kendall
and Dame according to the foregoing instrument ; but on the
29th of September 1835, a new agreement was made between
the said Kendall and Dame, in which, after referring to the
agreement between them of July 9th, it went on to recite, that
on the 5th of the preceding August, Kendall agreed to sell to
said Dame an undivided half of said estate for $ 85,000, with in-
terest from the 9th of July 1835 ; and it then provided that
Kendall should pay off and assume to himself said mortgages, and
should also pay to Dame such further sum so that the sum total
of said mortgages, and the sum to be paid, and the sum actually
paid said Dame, should amount to one full half of the purchase
money mentioned in the agreement of July 9th, and that the
other half should not be paid, but should be applied to pay or
offset the amount to be paid by said Dame for the amount of the

purchase money, on buying back of said Kendall one half of said estate ; and said Kendall was to hold said undivided half in his hands, or the same should stand in his name, as belonging to said Dame, and to be transferred by said Kendall, with said Dame's consent, to the South Wharf Corporation, together with said Kendall's half of said estate ; and that said Kendall and Dame should be considered as equally interested in said estate : And each of them agreed with the other to pay over and sustain one moiety or half part of all expenditures and sums paid, or thereafter to be paid or incurred upon said estate, either before or after the same should be transferred to the South Wharf Corporation : And they further agreed to divide equally the net profits that might be made on said estate and property, resulting from the sale of the stock of said South Wharf Corporation, and that said agreement of the 9th day of July preceding should " be controlled and governed by the provisions herein contained."

No settlement having been made with Wright, he, growing uneasy in relation to the business, on the 6th of January 1836 commenced a suit at law against Dame upon the agreement of July 7th 1835 ; and on the 11th of said January summoned the said Kendall as his trustee, and perfected the service on Dame, on the 8th of April 1836.

About the middle of January, a movement was made for the organizing of the South Wharf Corporation, in which said Wright fully participated, and at that time made no intimation that the deed of himself and Dame to Kendall, of the 9th of July 1835, was placed in Dame's hands upon any trust or condition, or was so delivered to said Kendall ; and he was then knowing to Dame's agreement with Kendall to repurchase half the estate ; but it did not distinctly appear, from any evidence, that the instrument of September 29th 1835 was ever shown to him. Afterwards, on the 25th of January, it was agreed to organize the corporation and to give the legal notice for that purpose ; and on the 6th of February a meeting was held, at which were present the said Wright and Dame, E. Rhodes, the partner and agent or attorney of Kendall, and Messrs. Weld, Jones,

Livermore and Morey. Wright presided, and Dame acted as secretary. The act was accepted, the board organized, three thousand shares were created and were subscribed for by Kendall, who took 2500 ; Livermore, 100 ; Jones, 100 ; Weld, 100 ; Morey, 20 ; Wright, 1 ; Dame, 1 ; and Rhodes, 178 ; and a vote was passed, (the substance of which was also made one of the by-laws or fundamental articles,) authorizing the purchase from Kendall of the premises ; and it was left with Morey, as the clerk of the corporation, to agree on the terms of sale and to procure a deed — which was in accordance with Wright's wishes — and an assessment was laid of $50 on each share of the company. Shortly afterwards a parol arrangement was made by Morey, on behalf of the corporation, with Kendall, for the price to be paid for the estate and the mode of payment ; and $175,000 was agreed upon as the amount of the purchase money, to be paid for by the corporation's assuming the mortgage of Dr. Shattuck, and by the application of the amount of the assessments laid on the 2678 shares subscribed for by Kendall and Rhodes ; and as to the balance, it was to be paid in cash, or it might be necessary to lay a further assessment, or it might be thought expedient to give Kendall security : This was spoken of, but the precise course was left somewhat undetermined.

About the middle of February, Morey drew a deed of the premises, to be executed by Kendall to the corporation, and sent it to him at his residence in Brookline, he being in a feeble state of health and not able to come to Boston. The deed was duly signed and acknowledged about the middle of March, and delivered to Morey and placed among the papers of the corporation, but was not recorded till the succeeding July, and after the filing of the plaintiff's original bill and the service of the subpœnas upon the persons then made parties. On the 25th of February 1836, Dame settled his account with Kendall, in which he was credited with the purchase money of the estate, less Dr. Shattuck's mortgage and interest on the same from July 9th 1835, and charged back with one half the purchase money ; and in the settlement he allowed $20,000 to take up

and cancel Thomas Kendall's obligation for one fifth part of the profits of the speculation, and also the several mortgages made to Cobb and the moneys advanced, &c.   But no other papers were executed, showing Dame's interest in the estate, besides the agreement of September 29th 1835, and the account thus stated.

It further appears, that H. S. Kendall, though he purchased the estate in his own name, in fact bought for himself and partners, and afterwards, being in very feeble health, on or about the 1st of June 1836, he made a settlement of his partnership concerns with his partners, and sold out to two. of them, Eben Rhodes and Charles L. Roberts, all his interest in the said Sea Street property, and a transfer was made to the firm of Freeman, Cobb & Co., on the books of the corporation, of the said 2678 shares in said corporation.

Afterwards, on or about the 9th of July 1836, the plaintiff's bill was filed and subpœnas issued, and in the fall of the same year the said Kendall died.   From that time various proceed ings have taken place ; and the present defendants to the plaintiff's bill are the said Dame, Messrs. Rhodes and Roberts, constituting the firm of Freeman, Cobb & Co., the South Wharf Corporation, the executor of the said Kendall, and the widow of said Kendall, who afterwards intermarried with F. C. Whiston, and the said Whiston, and the minor children of said Kendall, who appear by the said Whiston, their guardian, and the said Jones, Weld and Livermore.   Morey, having conveyed away his shares in the corporation before the corporation were made parties to the bill, is not one of the defendants, but is one of the principal witnesses in the case.

It appears by the answers of Weld, Jones and Livermore, that they were each induced to subscribe for 100 shares of the stock in the South Wharf Corporation, on the representation of said Kendall, or one of his partners, that said stock would probably prove profitable, and that either of them might, within a reasonable time after the corporation should be organized, transfer their shares to said Kendall or said Freeman, Cobb & Co. ; and that they never paid any thing therefor, and have each since transferred 99 of their shares respectively, agreeably to the direction of said Freeman, Cobb & Co.

The facts in this case spread over a large space, but the fore-going summary of them is sufficient to a proper understanding of the questions which are raised by the respective parties.

The bill sets forth, that said Kendall took the estate subject to and charged with the same trusts on which said Dame held it, in relation to said Wright's share of the purchase money, and that the sale was to be in such manner that the debts, liabilities and charges provided for, should be immediately extinguished, and said Wright at the same time be discharged and exonerated therefrom contemporaneously with the execution of said deed, and that Dame should receive the residue of the consideration in money or securities satisfactory to said Wright ; that the estate was to stand charged with such trust ; that it was not competent for the said Dame and Kendall to cancel and rescind the con-tracts of the 7th and 9th of July 1835, to the prejudice of the said Wright ; that if the partners of said Kendall, or said South Wharf Corporation, afterwards became purchasers of said prop-erty, they took it well knowing of the trust under which the said Dame and Kendall held the estate, and now hold it, and the said corporation became, by the purchase thereof, the trustees of said Wright, and are bound to fulfil the trusts and agreements under which said Dame held the estate, and to per-form the agreement of sale first made between said Dame and Kendall, and to pay to said Wright the balance due to him : And the prayer of the bill is, that the said parties, Dame, Rhodes, Roberts and the South Wharf Corporation, &c. may be compelled specifically to perform the agreement of sale first made between said Kendall and Dame, and, after extinguishing the mortgages, liabilities, debts and charges provided for in the indentures of September 29th 1829 and July 7th 1835, to pay him one half the residue ; and that the parties may be restrained from alienat-ing any part of said estate, until the execution of said agreement and the performance of said trusts ; and that the said estate may stand subject to and be charged with the performance of the same ; and that the equitable share and interest of said Dame in the stock in said corporation, and in its estate holden for him in trust, may be applied to and stand charged with the payment of

all such sums of money as said Wright may establish his title and claim to recover against said Dame ; and for such further and other relief in the premises, as the nature and circumstances of the case may require.

The defendant Dame admits that on a final settlement between him and Wright, according to the terms of the agreement of September 29th 1829, there will be a balance due to said Wright, which he is willing to pay ; but that it is a personal demand on him, and that the estate, by reason of the conveyance to Kendall by the joint deed of Wright and himself, is discharged of any and all trusts or liens thereon ; and the other parties, not disputing the personal liability of said Dame, deny the existence of any trust or lien on the said estate in any manner, or that the same is in any way, either as the property of the corporation or of individuals, held chargeable for the payment of any balance due from Dame to Wright.

The cause has been elaborately and ably argued by the learned counsel on each side. On the part of the plaintiff, it is contended that the trusts declared in his favor are a charge, either on the whole or a moiety of the estate : That Kendall took the estate under the trust and agreement to satisfy Wright as to the share of the purchase money which should be coming to him ; and that Kendall took it for himself and his partners ; and that the after agreement between Kendall and Dame was not a distinct operation, but that the agreement of July 9th and September 29th 1835 proves an originally joint operation between them, and that the joint deed of Wright and Dame to Kendall, of July 9th 1835, was not intended to alter the agreement as to Wright's security, but merely to enable Kendall to convey a perfect title to *bonâ fide* purchasers : But that if it was so intended, then there is created, by force of that conveyance, an implied trust or lien on the land for the unpaid part of the purchase money, in favor of Wright, which binds not only the estate in the hands of Kendall and his partners, but also in the hands of subsequent vendees having notice that the purchase money remains unpaid : 2 Story on Eq. § 1217 : That the South Wharf Corporation took it subject to such trust, because they are affected with notice and are

in fact nothing more than Freeman, Cobb & Co. ; it being a mere change of the condition of the estate for its more profitable management : That Wright has done nothing to destroy his claim ; has not dealt with others or taken any security — and the trust going with the lands, he ought not to be barred of his claim.

On the other hand, the defendants contend, that the plaintiff and the defendant Dame, being tenants in common of the estate, the plaintiff, by his deed of September 29th 1829, conveyed the whole legal estate to Dame ; and that Kendall, by force of the joint deed of Wright and Dame, of July 9th 1835, took the estate discharged of all trusts ; that the very object of requiring such a deed was to free it from trusts and incumbrances, and that it was adequate to pass the trust estate and to convey a perfect title ; that the trust in Dame being to sell and convey, the purchaser was not bound to look to the appropriation ; that all trusts being thus cut off, Dame, by this agreement with Kendall, of September 29th 1835, took his interest in said estate, free of any trust ; that Wright's consent to the sale to the South Wharf Corporation was a waiver of any lien, if any existed ; and that no lien in behalf of the vendor, for the unpaid purchase money, existed at the time of making the conveyances, if it exists now, which is denied ; and that the corporation having acquired a perfect title, Wright's remedy is against Dame personally on his covenants, for any balance due him, and not on the estate.

The facts proved in this case afford satisfactory evidence, that the estates purchased by Wright, in the spring of 1827, were, by force of his deed to Dame, of May 1827, held by them as tenants in common, subject to the incumbrances to N. R. Cobb, or the firm of Freeman, Cobb & Co. These relations do not appear to have been changed until September 1829, at which time Wright conveyed all his legal interest in the estate (not otherwise expressly disposed of ) to Dame ; and by a separate instrument, the trusts under which he held it were declared. In July 1835, a new instrument was executed between the parties, and a further declaration of trusts was made, so far as it respected the sale of the estate ; and this further agreement was evidently based upon the expectation of making a sale of the property to

Kendall, one of the firm of Freeman, Cobb & Co., and which very shortly afterwards took place. One of the trusts in this instrument is thus expressed : " And this authority " (that is, to sell the estate) " is given upon the express condition that said Dame shall appropriate the proceeds of such sale in the manner set forth in the agreement above alluded to, so far as to cancel the debts, demands and liabilities therein referred to ; and the residue of said Wright's interest in said property, as secured to him by said agreement, shall, instead of a reconveyance of land, as therein provided for, *be paid to him by said Dame, in money or other satisfactory security, on demand."* Of the nature and meaning of this clause there can be no doubt, so far as the surplus that might be coming to said Wright is concerned. With this agreement and authority in his hand, he concluded a contract with Kendall for a sale of the premises to him, for a sum authorized by said agreement. The instrument executed by Kendall and Dame contains these clauses — the first as it regards the title — namely : " Said Dame is to convey the same title and interest in said estate, which was conveyed to said Wright and him (said Dame and said Wright) by the persons before mentioned, by deed warranting against all persons claiming by, from or under him or said Wright ; and all the water rights, wharves and privileges, except those herein before reserved, are to be fully conveyed." Here, it will be perceived, there is no stipulation for a deed from Wright. The other clause relates to the terms of payment : " Said Kendall hereby agrees to give said Dame, for said estate, the sum of $ 170,005, payable as follows ; to assume and pay said mortgages, and the balance, so far as one moiety thereof, to pay in cash or such security as shall be satisfactory to said Wright ; and as to the balance, by notes and mortgages of said estate on demand, or for such time and times as shall be mutually agreed on, and on interest." This stipulation is a full recognition of Wright's beneficial interest in the premises ; of his right to receive a portion of the purchase money, and to receive it in the manner provided for in his agreement, by virtue of which the sale is made ; and an undertaking, on the part of Kendall, to satisfy Wright as to the manner of

42 *

this payment. And it is the declaration of a trust in behalf of Wright, which he could enforce against Kendall ; and a settlement with Dame in a mode not approved by Wright would not be binding upon him. He is a *cestui que trust*, and capable of maintaining a bill for the specific performance of the trust. But it appears that afterwards, though on the same day, an alteration was agreed upon as to the mode of conveyance and transfer of the estate to Kendall. He, by advice of his counsel, required a joint deed from Wright and Dame, with release of dower of the estate ; and his purpose in doing this, as testified to by the counsel, was to clear the estate from all trusts, liens and incumbrances of every sort whatever, so that he might have a clear and perfect title to the estate. But whether this purpose was disclosed to Wright, when the joint deed was required, does not distinctly appear. Whether this joint deed was required for any other purpose than to enable Kendall himself to pass a perfect title to a *bonâ fide* purchaser, or whether the object was not only that, but also to be relieved from all accountability to Wright himself for his share of the purchase money, is by no means free from doubt ; for Kendall had no claims, so far as appears, to enforce against Dame, towards which he could apply the purchase money, that did not exist also against Wright ; and Wright had received no consideration for releasing his lien on the real estate for the payment of that portion of the trust money that would be justly due to him on the settlement of the claims against him.

It has, however, been urged with great force of argument, by the defendants' counsel, that this joint deed was an absolute conveyance of the equitable estate of Wright, and was designed and intended to convey it, and that it was not required, nor was it needed, for any other purpose ; and that from the very nature of the existing trusts between Wright and Dame, Kendall necessarily took an estate, by virtue of that deed, discharged from all trusts whatever. But upon the view which we have taken of the case, it does not become necessary for us to decide as to the true intent and legal operation and effect of this deed ; and for the reasons which follow : It appears that this agreement of the 9th of July, between Dame and Kendall, was not carried into effect

agreeably to its terms and provisions ; and this, not from the fault or knowledge of Wright, but in consequence of another negotiation about the estate, between Dame and Kendall, in which Dame, acting for himself only, and not in behalf of Wright, treated Kendall as the owner ; premising here, however, that after making the joint deed aforesaid, Dame stipulated with Wright, that it should in no wise affect their agreements of July 7th 1835 and of September 27th 1829. This negotiation between Dame and Kendall is said to have commenced on or about the 5th of August 1835 — though from the answer of Dame it would appear that the subject had been started before — and related to the purchase by Dame of an undivided half part of the estate ; and it resulted in their agreement of September 29th 1835. This instrument, we think, fully recognizes the agreement of July 9th 1835, by reciting its provisions, and especially " as to the balance of said purchase money, so far as one moiety or half part thereof is concerned, to pay in cash or such security as should be satisfactory to one William Wright ;" and Kendall, after these recitals, stipulates that he " shall go on and pay off, or assume to himself, said mortgages, and shall also pay to said Dame such further sum, so that the amount of said mortgages, and the sum to be paid, and the sum actually paid said Dame, shall amount to one full half of the purchase money mentioned in the said agreement of July 9th 1835, and the other half," &c. This, we are of opinion, is a full recognition of Wright's beneficial interest in the purchase money, and a stipulation to provide for and pay the amount of the purchase money belonging to him, as provided for his benefit in the instrument of July 9th ; and the legal effect of it is, to revive the trust in behalf of Wright, if it was waived by the joint deed of Wright and Dame, and to confirm it, if it was not waived. So that the moiety of the estate becomes, by force of these instruments, charged with the payment of Wright's share of the purchase money, after deducting the amounts due from him, agreeably to the agreement with Dame, as expressed on the 9th of July. Besides ; it may be said, that if this were not so, Dame might become the owner of the whole estate, subject to the mortgages, without having paid

one cent of the purchase money, or provided any security for the same, and thus turn Wright round to a mere personal claim against him. For if he could purchase out half the estate thus freed from the trust, he certainly could buy the other half in like manner. Being of opinion that the trust in behalf of Wright, for his unpaid share of the purchase money, was revived or confirmed by the instrument of September 29th 1835, the real in quiry is, has this trust been performed ; and if not, has it been waived and discharged by Wright ? That it has been performed is not pretended ; for he has only received, so far as the accounts show, about $750 in money from Dame, since the 7th of July 1835. Whether it has been waived and discharged, depends on the character and legal operation of the transaction conveying the estate to the South Wharf Corporation.

The first mention in the papers, that I am aware of, in relation to the South Wharf Corporation, appears in the instrument of September 29th 1835, in which, speaking of Dame's un divided half of the estate, it provides, " that said Kendall shall hold said undivided half in his hands, or the same shall stand in his name as belonging to said Dame, and to be transferred by said Kendall, with said Dame's consent, to the South Wharf Corporation, together with said Kendall's half of the estate ; " and they are to be equally interested in the same, before or after the same shall be transferred to the South Wharf Corporation. It is obvious from this, that the intention to turn the estate into corporate property was a matter in contemplation between Dame and Kendall, and that the charter was to be used by them, if they thought best ; and, for aught that appears, without any special reference to Wright. Afterwards, with the consent of Wright, and with his coöperation as one of the two persons named in the act of incorporation, the company was organized. But though Wright took a share, it does not seem that it was for any other purpose than to give effect to the organization. Whether necessary for that purpose, or not, is here unimportant to be considered ; because he was not a subscriber for a large number of shares, as he must have been, if he had intended to participate in the enterprise.

We agree in the opinion, that if strangers to these transactions had become corporators, they would have held their interest free from any trust in favor of Wright, so far as any express trust existed in his favor. The act of Wright, in consenting to and aiding in the transfer of the estate, would have barred his claim, as against strangers. I speak now of the express trust. But we cannot shut our eyes in regard to this transaction, and consider the corporation as a stranger making a purchase of the estate ; but we feel called upon to look through the veil which the giving to the property a corporate form has thrown over the matter, in order to ascertain the rights and liabilities of these parties, as amongst themselves. And, in the first place, though the contract was made by Dame with Kendall alone, and in his name, yet the proofs clearly show that it was a partnership transaction, in which his partners were interested with himself ; and whatever their actual knowledge of the proceedings was, they had full means of knowledge, and they are affected with the knowledge of Kendall and bound by his proceedings as their copartner. In respect to Morey, he was acquainted with all the facts, and had therefore full notice of the situation of the parties, and no doubt subscribed for his shares in the full belief that the account of Wright and Dame would be amicably adjusted, and the whole business arranged between them. And in respect to the other subscribers for shares, Weld, Jones and Livermore, they were volunteers, paying nothing, and having, by previous understanding and agreement with Kendall or his copartners, a right to surrender their shares at their own pleasure, within a reasonable time, if they did not wish to continue ; so that they were either not entitled to notice, or were affected by the knowledge which Freeman, Cobb & Co. had of the whole transaction. Without discussing, therefore, the point raised, as to what is constructive notice to a corporation, we think, in this case, the corporation took the property with express notice of all material facts, and that the corporators interested in it had personal notice ; and that the corporation accordingly took the estate subject to the existing trust in favor of Wright ; for it stands in the place of Kendall, and is in truth nothing more than a legal form or mode of holding the estate on the part of Dame and Kendall.

It has been argued, that the corporation has done certain acts and paid moneys, which place them in the condition of *bonâ fide* purchasers, by the employment of Morey, and by organiz- ing and laying an assessment, &c.   But in regard to this, we think these facts do not bear on the subject of the trust.   The services rendered by Morey were in great measure performed for the organizing of the company, and must have been rendered to put the company in a situation to act, whether they made the purchase or not.   And the act of drawing the deed to the cor poration would rather be a charge against Kendall than to the corporation, as he was to convey the estate.   But, in point of fact, the services of Morey were not a payment for shares sub- scribed by him, but an independent transaction ; and the sup- posed payment by Kendall, in the assessment laid on the shares, is merely recognizing the incumbrances on the estate as existing in that particular form.

That Wright was not conusant of his legal rights at the time, there can be little doubt, as he was silent with regard to any equitable claim or lien that he had on the estate ; but igno- rance does not destroy them.   *Barrell* v. *Joy,* 16 Mass. 221. That he meant to surrender his rights, or to look to Dame's per- sonal responsibility alone for the money or securities due to him, cannot be admitted ; because, prior to the forming of the corpo- ration, or taking active steps towards it, he, being uneasy about his demand, brought his action at law against Dame, and sum- moned Kendall as his trustee : Which fact he immediately com- municated to Morey, and he was not required or asked to discontinue that suit ; and though it probably would not have bound the estate in the hands of the corporation, taking without notice of Wright's trust, yet it shows fully Wright's intention to have other security than the personal responsibility of Dame. This suit is said to be still pending.   Whether Kendall ever answered, does not appear ; but I presume not, as an attempt, on the part of Wright, to take his deposition, failed on account of his feeble health.   It has been argued by one of the counsel, that Wright, having commenced this suit, is bound to pursue his legal remedy against Dame, and that he cannot prosecute this till   But that suit has not been pleaded in bar to this ; the par-

ties are not the same ; and at most, we think Wright can only be put to his election. It is not necessary, however, now to decide whether he is bound to do it or not.

It has been argued by the counsel of the plaintiff, that if the trust in his favor was discharged by his joint deed with Dame to Kendall, and he should be considered in the mere light of a joint vendor of the estate ; even then he would have a lien on the estate for his unpaid portion of the purchase money, in the nature of an implied trust, and that this trust could not only be enforced against Kendall, but against the corporation, as purchasers with notice. The existence of such a lien, in this Commonwealth, is denied by the counsel on the other side, or at least as not existing in favor of this plaintiff, because the deed under which he would seek to enforce it was made prior to the revised statutes, and therefore no such lien was in contemplation between the parties and cannot be enforced. But though I have carefully considered this point, and the various authorities on the subject, both English and American, I do not feel called upon to give an opinion upon it in this case ; because the court think the express trust, created in favor of Wright, still continues.

A doubt has been raised, whether the bill is properly framed to meet the plaintiff's case. But it seeks a specific performance of the agreements made between these parties, which necessarily involves the statement of the account with Dame ; and it also asks for general relief ; so that, if the special relief asked for is not properly set forth, still, under the prayer for general relief, it may be afforded, because it will be in conformity to the case made by the bill.

In coming to this decision, which we have not done without difficulty, we do not perceive that it will work injustice to either party. Wright has not been paid nor settled with, and the corporation have in fact paid nothing.

The defendant Dame himself was willing, as we understood, that his shares in the corporation should stand bound for the balance due from him ; and we decide, that instead of those shares, one moiety of the real estate shall stand so charged.

In conformity with this opinion, the cause must be sent to a master to state the account between Wright and Dame. In doing this, it will be understood that the settlement between Dame and Kendall is not conclusive upon Wright, as he was not a party to it; and for the balance due to Wright, after ascertaining the same agreeably to the provisions contained in the agreements of September 29th 1829 and July 7th 1835, the moiety of the estate is to stand charged for the security of it.