SAMUEL MOORE and others

*v.*

MARGARET CARLING and others.

A, an habitual drunkard, conveyed lands to B, without consideration, and B immediately reconveyed to A for life, with remainder to his heirs, reserving a nominal rent, which was never in fact paid or claimed.—*Held*, that the two instruments must be construed together, and that B had no beneficial interest in the lands, but merely took the title in trust.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. D. Bedle*, for complainants.

*Mr. J. Whitehead*, for defendants.

THE CHANCELLOR.

This suit is brought by the heirs at law of Samuel T. Moore, deceased, late of Hudson county, against some of the devisees and heirs at law of Michael Carling, deceased, late of the same county, to obtain a conveyance by the latter to the former, of a lot of land in that county, which, as alleged by the bill, was held by Carling, at the time of his death, in trust for the heirs at law of Moore, who had died some years previously.

The property in question is a lot of about two acres and a half. It was purchased by Moore before the year 1837. He built a dwelling-house on it, wherein he, with his family, resided at the time when he made the conveyance to Carling, who was his father-in-law. Moore was a man of intemperate habits. On the 12th of May, 1837, he, with his wife, conveyed the property to Carling, by warranty deed. The consideration expressed in the deed was $1,000. At the same time he assigned to Carling his horse, cattle, farming utensils and implements of trade. The consideration

stated in the bill of sale was $250. The bill alleges that these conveyances were made and taken in trust for the benefit of Moore, to guard him and his family against the consequences of his intemperate habits, to prevent him from squandering the property in dissipation.

Moore died on the 2d of April, 1851. His wife and children survived him. He, with his family, occupied the property up to the time of his death. After his death, his wife and children continued to occupy it together until his wife's death; and the children have occupied it ever since their mother's death. Moore or his family has always paid the taxes, &c. on the property, and have made all repairs to it. They have never paid, nor been asked to pay, any rent for it, nor any money on account of their occupation. In 1845, Moore paid off a mortgage of $300 and interest, which was on the property when the conveyance was made to Carling.

After Moore's death, his widow, who was Carling's daughter, endeavored to obtain from her father a conveyance of the property to her and the children; but Carling (it is alleged through the influence of his wife) did not make it. After his death, she renewed her application to his widow, who was her mother, and it appears that the latter and Mrs. Moore's brothers and sisters were then willing to convey the property to her, and caused a deed to be drawn for the purpose, and it was executed by part of the family; but, in consequence of the ill feeling which arose from a strife over the will of Carling, in which Mrs. Moore took part, some of the family did not execute the deed, and it was not delivered. Subsequently, in Mrs. Moore's life-time, four of the children of Carling voluntarily executed a deed to her for the property for her life, with remainder in fee to her children.

No mention of the property was made in Carling's will. By it he gave all his property to his widow, for life, and provided that after her death it should go to his sons in equal shares.

The answer sets up the statute of frauds, denies the trust, and alleges that Carling purchased the land for the sum of $1,000 which he paid to Moore for it.

It appears clearly that the conveyance to Carling was merely voluntary. The proof is abundant that he paid no consideration whatever for the property. Contemporaneously with the execution of the deed and bill of sale to him, he, with his wife, executed and delivered to Moore an instrument of writing, under seal, by which he granted, demised and to farm let to Moore the land and all the personal property, for the term of Moore's natural life, from the 12th day of May, 1837, (the date of the instrument, and also of the deed and bill of sale,) at the yearly rent of fifty dollars, to be paid in equal yearly payments. The instrument contained an agreement that if any rent should be due and unpaid, or if default should be made in any of the covenants therein, it should be lawful for Carling to re-enter the premises or to distrain for the rent remaining due. Moore also thereby covenanted to pay the rent, and, at the expiration of the term, to quit and surrender the premises in as good state and condition as reasonable use and wear would permit, damages by the elements excepted. Following these covenants were the following words :

"And the said party of the first part doth covenant that the said party of the second part, on paying the yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid—viz., for and during the natural life of the said Samuel T. Moore—and, at the decease of the said Moore, the use and occupancy of said premises to descend to the heirs of the said Samuel T. Moore; and for the faithful discharge of all and singular the covenants and conditions herein expressed, the parties hereto have interchangeably set their hands and seals the day and year first above written."

The instrument was produced by the complainants' solicitor from the possession of the counsel of the complainants, who swears that he obtained it from Mrs. Moore. There can be no doubt whatever of the genuineness of this instru-

ment. It is evidence of a trust. It is in proof that Carling so regarded it. The witness to its execution testifies that Carling characterized it as a deed of trust when he executed it. The witness says that, when the paper was executed, he knew nothing of the deed from Moore to Carling; that, after carefully reading the paper to Carling and his wife, he, before he signed it as a witness, asked them the meaning and intent of it; that they said that the property was placed in the hands of Carling and his wife as a paper or deed of trust for the safe keeping of the property from being wasted or destroyed by Moore; that they had never paid Moore a dollar, or any money; that it was merely made to hold the property from being drunk up by Mr. Moore in rum, and, if Moore's children should outlive him, they should have the property back; and that they (Carling and his wife) never expected one dollar of rent.

The instrument then executed, while it is in form a lease to Moore for life, contains a provision that, on the death of Moore, the "use and occupancy of the property" *shall descend* to his heirs. This instrument is evidence that a beneficial interest in the property remained in Moore, notwithstanding the absolute character of the conveyance to Carling. It is dated on the same day with that conveyance. It was prepared by the same scrivener, and was manifestly a part of the same transaction with the conveyance. Though it reserves rent, Carling declared, when he executed it, that no rent was expected, notwithstanding the reservation. No rent was ever paid, nor was any ever demanded. From the day when the instrument was executed, to near the time of filing the bill, which was in 1867, a period of thirty years, Moore and his family remained in undisputed possession of the property, exercising acts of ownership over it undisturbed, and their right to do so unchallenged.

The conveyance to Carling was wholly voluntary. On receiving it, he executed and delivered to Moore, as part of the transaction, a deed (the instrument before mentioned), by which he assigned the property to him for life, with

Moore v. Carling.

remainder in fee to his heirs, on the reservation of a rent which he declared was merely nominal. It was, in effect, a declaration that he had taken, and that he held, the title of the property in trust for Moore for life, and for Moore's heirs at law in fee thereafter; for he, in effect, covenanted to hold the estate for Moore for the life of the latter, and thereafter for Moore's heirs in fee, in fact neither receiving nor reserving (though he made a nominal reservation) anything by way of compensation or consideration.

Where one conveys, without consideration, his land to another, and the latter simultaneously conveys the property to the grantor for life, with remainder to the heirs of the grantor, it is a natural conclusion that the first conveyance was made with a view to the latter, and that the grantee in the first conveyance had no beneficial interest in the property under the deed to him, but merely took the title in trust for the grantor.

In connection with the written declaration, the parol evidence of the trust is abundant and the proof undeniable. In *Barrell* v. *Joy*, 16 *Mass.* 221, the execution and delivery by the grantee of an indenture after the conveyance by which he covenanted to sell part of the property conveyed to him by the deed and appropriate a certain part of the proceeds to the discharge of certain claims against the grantor, was held sufficient evidence of a trust in the grantee in the property in favor of the grantor, and a sufficient declaration in writing thereof.

The complainants are entitled to the relief they seek, and there will be a decree accordingly.