[No. 32618. Department One. March 22, 1954.]

FRED S. PORTER et al., Respondents, v. RACHEL RUTH LAUE, Appellant.[1]

'Reported in 267 P. (2d) 1064.

Don G. Abel, for appellant.

Lester T. Parker, for respondents.

MALLERY, J.—The defendant is the daughter of William M. Porter, who died intestate in Oregon, in April, 1940, and left a forty-acre tract of timber land in that state.

In July, 1944, defendant and her brother and sisters gave their mother a quitclaim deed to the property. This deed was lost before it was recorded. Shortly after its delivery, however, the mother gave defendant a warranty deed to the timber land.

Thereupon, defendant wrote similar letters to her brother and sisters. In the letter to plaintiff Fred S. Porter, she made reference to her mother's warranty deed to her and declared a trust in this language:

"It is too bad that Judge Long lòst the other quitclaim deed. He just let us know last month that he had not recorded it & had lost or misplaced it so—we are sending around this new one for we have a deal on to sell this timber and so as not to complicate things later Mom made me a deed to the timber & as soon as it is sold I will divide it (the money) 5 ways & send each their share—All other property is liquidated—."

The mother died in Aberdeen on December 9, 1944, and thereafter defendant sold the timber land for seven thousand dollars. She gave two of her sisters part of the proceeds, but has failed and refused to turn over anything to the plaintiffs, who brought this action to compel her to do so. The trial court gave each a judgment for $1,356.67. The defendant appeals.

The trial court's conclusions of law Nos. I and II read:

"I

"That the defendant held title to the above described real property under an express trust as evidenced by her written letters referred to in the findings of fact for the

express purpose of selling the same and dividing the proceeds among the children of the said William M. Porter and Jennie F. Porter, including one-fifth to each of the above named plaintiffs.

"II

"That the written letters signed by the defendant are sufficient to establish an express trust in the real property, *but the agreement for the distribution of the proceeds of the sale of the real property does not come within the statute of frauds.*" (Italics ours.)

It is apparent that the trial court and counsel for respondents, in an excess of caution, rested the decision upon the ground that there was an express trust, and also that there was an enforcible contract.

■■ Appellant contends that there is no express trust for the reason that there is no evidence in the record of any statement or writing by the mother of her purpose to establish such a trust. The statements in appellant's letters are admissions against interest, and are themselves sufficient to establish the trust.

The power of a *trustee* to declare a trust was upheld in *Holmes v. Holmes,* 65 Wash. 572, 118 Pac. 733, in which this court said:

"The important and decisive question in the case is, can an express trust be proven by a writing signed by the trustee. We think the question must receive an affirmative answer. In vol. 3, Pomeroy's Equity Jurisprudence (3d ed.), § 1007, this view is announced in the following language:

" 'The written evidence of the trust which will satisfy the statute *may* come from the grantor,—the one who intends that a trust shall be created for a certain beneficiary,— or from the trustee,—the grantee to whom the land is conveyed for the purposes of the trust, but not from the *cestui que trust.* The grantor may declare the trust in the will or the deed by which the land is conveyed or devised, or in an instrument separate and distinct from the conveyance; or he may declare himself a trustee, and that he holds the land in trust, without conveying the legal title. When the trust is not created in and by the instrument of conveyance, it may be sufficiently declared and evidenced by the trustee to whom the land is conveyed, or who becomes

holder of the legal title; and this may be done by a writing executed simultaneously with or subsequent to the conveyance, and such writing may be of a most informal nature.' "

The trial court had the right to believe appellant's admissions in her letters setting out the trust declaration, rather than her contradictory and self-serving testimony at the time of the trial. We find the record sustains the trial court's conclusion of law No. I.

Appellant contends against the existence of an express trust on the further ground that the letters were an informal memorandum and did not contain the description of the land with reasonable certainty, and that, therefore, there was no express trust.

The rule, with regard to the need for certainty of description of land, applies when the declaration of trust is made *before* the conveyance of the land. Where the declaration is made *after* the conveyance, a reference to the conveyance sufficiently identifies the land in question. As was said in *Barrell v. Joy,* 16 Mass. 221:

"But it seems to be settled, by authorities cited at the bar, that any declaration in writing, made by the grantee or assignee of property, at any time after the conveyance, is competent proof that the property was to be holden in trust according to the terms of such declaration, within a fair and liberal construction of the statute of frauds; and that letters or other papers, however informal, are sufficient to constitute such declaration."

65 C. J. 261, § 41, states:

"Letters and correspondence may constitute sufficient memoranda to satisfy the statute of frauds; . . ."

We agree with respondents that an express trust was established in this case. Having so found, it is not necessary to rest our affirmance of the case upon the italicized part of the conclusion of law No. II, namely, that there was an agreement between the parties which did not come within the statute of frauds.

Accordingly, we do not discuss appellant's contention that there was no consideration for such an agreement be-

cause the second quitclaim deed was not necessary, nor her contentions that there is no evidence of respondents' motives in giving the second quitclaim deed.

The judgment is affirmed.

GRADY, C. J., HAMLEY, FINLEY, and OLSON, JJ., concur.