Hamburgh Manufacturing Co. *v.* Edsall.

---

Between THE HAMBURGH MANUFACTURING COMPANY, appellants, and JOSEPH E. EDSALL and others, respondents.

A trustee is never permitted to make any profit to himself in any of the concerns of the trust—on the other hand, he is not liable for any loss which occurs in the discharge of his duties, unless he has been guilty of negligence, malversation, or fraud.

A trustee is not chargeable with more than he has received, unless in a case of gross negligence amounting to wilful default.

An order was made in this cause in the Court of Chancery referring certain matters to a master, who having reported, exceptions were filed by the complainants. The Chancellor, acting on the advisory opinion of Hon. Joseph F. Randolph, sitting as master, overruled these exceptions. From this interlocutory decree the complainants appealed.

The facts of the case are fully stated in the report of the master and the following opinion.

GIFFORD, M. In pursuance of an order of this court in the above stated cause, made on the 20th of September,

1848, by which, among others things therein contained, it is ordered that it be referred to Archer Gifford, esq., one of the masters of this court, to take an account of the personal property taken possession of by the said Elias L'Homedieu and Joseph E. Edsall under the said trust, and of all other the personal property, being the proceeds and profits of the said real estate and personal estate purchased with the proceeds or profits thereof, and of the rents, issues, and profits and produce of the said real estate, as well of the Clinton Manufacturing Company as of the Hamburgh Manufacturing Company, which have been possessed or received by the said defendants, Elias L'Homedieu and Joseph E. Edsall, or either of them, or by any other person or persons, by their or either of their order, or for their or either of their use. And further, in conformity to the decree of this court, theretofore made in this cause, that the said master also take an account of the respective debts due from the said the Hamburgh Manufacturing Company to the defendants, respectively, at the time of the said conveyance to the said Elias L'Homedieu, and the interest which hath accrued thereon, and the amount, if any, paid to them respectively, I, the said Archer Gifford, do respectfully report to his Honor the Chancellor, that having first duly notified the parties, I have been attended at my office and at other places by the counsel of the respective parties, and do find that Elias L'Homedieu did, by deed of assignment and transfer, bearing date the 2d of April, 1846, and marked exhibit R. H., No. 5, sell and convey and assign his estate, right, title, and interest in the property in question, and all his claims, liens, and debts thereon, to Joseph E. Edsall; that the said Elias L'Homedieu has since departed this life, and that the said Joseph E. Edsall, as surviving trustee, has accounted before me for the rents, issues, and profits and proceeds of the trust property, pursuant to the terms of the reference in this cause, from the 1st of June, 1839, the time of taking possession of the said property

by the said L'Homedieu and Edsall, until the 1st of June, 1849, from which time to the time of taking this account the said premises have been vacated, all business thereon having been discontinued, and no use whatever made of said property, either for letting or any other purpose whatever. And I do further report, that in taking such account, it fully appears, that from the rents, issues, and profits, and all the proceeds and produce of the said trust property, there remains nothing in the hands of the said Joseph E. Edsall, to whom the trust survived, wherewith to be charged. And I do further find, from the evidence taken before me, that the said premises, having lain dormant from the time prior to December, 1838, to June, 1839, when the defendants took possession, the dam, flumes, and some other of the most valuable works on the said property having been destroyed by freshets, and otherwise injured and become tenantless, that the advances which became necessary for erections and repairs, and in conducting the business of the said property, exceed the receipts from the business carried on by said defendants, and from all other sources of revenue, the sum of $134,025.61, without taking into account any salary or allowance of commissioners, which will appear by Schedule B., No. 5, to this my report annexed, and which I pray may be considered as part thereof. I do further report, that there have existed a large amount of debts against the Hamburgh manufacturing property, none of which appear to have been paid or compromised before the taking possession thereof by the said L'Homedieu and Edsall, as herein before mentioned, although the said premises had been leased to Edward W. Pratt, from the first of December, 1838, for three years, with a view to the payment and settlement of said debts, without any money realized thereon; and I find that the liens upon the said trust property and the debts of creditors of the Hamburgh Manufacturing Company, and which are preferred under the said trust, being claims on the tract it-

self, including Edsall's mortgage on the Mine farm, and secured by the trust deed, in conformity to the decree of the Court of Appeals, and the reference to me by this honorable court, are as follows, that is to say:

*Firstly.* Liens by mortgage and judgments, and otherwise secured by the trust originally in part given to the said Joseph E. Edsall, and in part assigned and transferred to him, and now held by him and due thereon to him, up to the first day of July, instant, the sum of $58,228.25, as appears by Schedule A., No. 2, to this my report annexed.

*Secondly.* Debts secured by the trust to others than the said Joseph E. Edsall, that is to say: To Daniel Haines and others the amount of $6497.09, as appears more particularly by Schedule A., No. 3, which said schedules I pray may be considered as a part of this my report.

I have further made the general results to appear by the several additional schedules—B. No. 1, B. No. 2, B. No. 3, B. No. 4, and B. No. 5, which I pray may also be taken and considered as part of this my report.

In making my report respecting the several matters above mentioned and referred to in the schedules annexed, I have considered the said Joseph E. Edsall, by virtue of the said conveyance or assignment of said Elias L'Homedieu to him, and by having survived the said L'Homedieu, to have acted as a trustee for said creditors, and as such trustee accountable (acting as a trustee for said creditors) for any rents and profits that may have come to his hands, but not accountable for loss or damage or for use or occupation of the said premises. I have further considered that, under the circumstances, the said Joseph E. Edsall was a mortgagee of said premises, and one of the largest creditors; and it appearing, from evidence, that the said property was taken possession of with the intention of carrying on a business which has utterly failed, and that no balance remains in the hands of said Edsall for which he can be allowable, but rather

a balance due to him, that I have made no allowance of commissions to said Edsall, to which, as trustee, he might otherwise be deemed to be entitled.

RANDOLPH, M. The interlocutory decree in this cause directs the master to take an account of the personal property taken possession of by the said L'Homedieu and Edsall, under the trusts named in the decree, and of all other the personal property, being the proceeds and profits of the said real and personal estate, or purchased with the proceeds or profits thereof, and of the rents and issues, profits and produce, of the said real estate, as well of the Clinton as of the Hamburgh Manufacturing Company, which have been possessed or received by said defendants, or either of them, or by any other person or persons, by their order, or the order of either of them, for their use. The master was also directed to take an account of the debts due from the Hamburgh Manufacturing Company to the defendants at the time of the conveyance to said L'Homedieu, and the interest and payments thereon.

The master reports the debts due to Joseph E. Edsall, one of the defendants, from the Hamburgh Manufacturing Company, at the time of the conveyance to Elias L'Homedieu, December 24th, 1838, with the interest from that time to the 1st of July, 1856, to be $58,228.25, and the other debts due from said company to be $6497.09. He also reports the advances made by the defendants in carrying on the Hamburgh iron works, from the time they took possession of them, to be $380,020.40, and the proceeds arising from the sales of iron, &c., by the defendants, to be $207,661.64, leaving for excess of advances $172,358.94, or deducting from the advances $38,333.33, for services rendered by defendants, the excess of advances above the sales and receipts are reported at $134,025.61. The master also reports that Joseph E. Edsall, having survived his co-trustee, the said Elias

L'Homedieu has, as such survivor, accounted to him for " the rents, issues, and profits and proceeds of the trust property, pursuant to the terms of the reference," from the taking possession of the trust property, on the 1st of June, 1839, until the premises were vacated and the business discontinued by the defendants, June 1st, 1849; and he reports, " that in taking such account, it fully appears, that from the rents, issues, and profits, and all the proceeds and produce of said trust property, there remains nothing in the hands of said Joseph E. Edsall, to whom the trust survived, wherewith to be charged."

To this report several exceptions have been taken, but all that has been urged upon the hearing is substantially embraced in the first and third exceptions, which are—

(1) That the master has proceeded in his report on a wrong basis, in charging the trust estate or trust fund with the losses in the business conducted by the defendants on their own account and for their own benefit. And also, (3) because the complainants claimed, before the master, that the defendants be charged with an annual rent for the trust property during the time they occupied the same in carrying on their private business, which mode of accounting was denied by the master, and the *cestui que trust* and creditors were treated by him as partners in the said business, and liable for the losses in the same, conducted solely for the benefit of the defendants.

The complainants insist that, by the terms of the reference, the master must charge the defendants with an annualrent, and the interest thereon; and they produce some two or three witnesses, who state that from two to three or four thousand dollars a year would have been a fair rent for the trust property. On the other hand, the defendants say they are only trustees; that they never rented the property; that they only took possession thereof at the earnest request of the creditors of the Hamburgh company, when nobody else would take it, by law or otherwise, to preserve it from destruction, and to hold

and work it until the same could be sold or rented; that for the same reason, they were compelled to retain the same for several years, and work it at a sacrifice, and until the aggregate loss exceeded $100,000, and that therefore they have nothing for which they ought to account.

It appears, from the evidence, that all the personal property was sold by the sheriff prior to the possession of the defendants; and as to any personal property, the proceeds and profits of the real estate, or purchased therewith, that of course must depend on there being such proceeds and profits; so that in reality the whole matter is narrowed down to the inquiry, whether the master has, in accordance with the reference, taken an account of the rents, issues, profits, and produce of the real estate held in trust.

Ordinarily an account required from a trustee of the rents and profits, or of the rents, issues, profits, and produce, would be an account showing the balance in his hands of the rents and produce received over and above the necessary expenditure; but as in this case no rents were received by the trustees, unless they are themselves chargeable with the rents, it is necessary to look beyond the order of reference to ascertain as well what the court and party meant by the reference, as for what the trustees, by the principles of law and the facts in this case, are chargeable.

It appears, by the evidence in this case, that the Hamburgh and Clinton manufacturing companies, some years since being insolvent, and the sheriff of Sussex county having against them several executions, on which he had advertised, and was about to sell their property, the creditors of said companies, after several conferences on the subject, on the 7th of December, 1838, entered into a written agreement, by which, amongst other things, they agreed that Elias L'Homedieu, as their agent and trustee, should purchase, for the creditors' use, the property of the two

companies, to be sold by the sheriff, for any sum not exceeding, with the encumbrances, the sum of $32,000; and they authorized their agent and trustee to raise, by bond and mortgage on the premises, such sum of money as would be sufficient to pay the purchase money, the amount of encumbrance, the creditors' debts, and two thousand dollars to put the furnace in blast; they authorized him also, upon certain terms, to lease and to sell the property. After this agreement was executed, the property was sold, and Mr. L'Homedieu, in pursuance thereof, became the purchaser, and subsequently entered into possession thereof, and leased the property, and also entered into an agreement to sell the same to Edward W. Pratt, a large stockholder in the company, one of the complainants, who, through pecuniary embarrassments and other causes, was unable to comply with his lease or agreement, or to possess and use the property under them. Mr. L'Homedieu failing to dispose of the property by lease or otherwise, or to raise money thereon to pay the encumbrances and debts, and put the property in order for blast, the creditors were called together to devise the means for disposing of or using the same. All the creditors, except L'Homedieu and Joseph E. Edsall, refused to take upon themselves, together or separately, the use of the property, several of them declaring that they would rather lose their debts than run the risk. Mr. Pratt, being at this time confined for debt in the Newark jail, gave up his lease and agreement for purchase; and at length L'Homedieu and Edsall, at the earnest request of the creditors, concluded to take possession of the property, and endeavor to work it to the best advantage. Edsall was the largest creditor, and held mortgages on the property, and says he took possession, as mortgagee, in conjunction with L'Homedieu, as trustee, whom he has survived, and whose interest he acquired, and he is now the sole trustee, not only for the agreeing creditors and such others as did not enter into the agreement, but

also, according to the decision of this court and of the Court of Errors and Appeals, as trustee for the Hamburgh company and its stockholders, amongst whom are Edward W. Pratt and the other complainants, if there be anything left of the property and its earnings after the encumbrances and debts are all paid. There seems to have been no lease or other agreement, either by parol or in writing, entered into by or for L'Homedieu and Edsall, when they took possession of the property, with a view of working it, on the 1st of June, 1839.

Thomas D. Edsall says, in his testimony before the master, that he was present at two or three meetings of the creditors at Hamburgh and at Newton, and one at Governor Haines' office, prior to the possession taken of said works by L'Homedieu; the creditors then said L'Homedieu and Edsall should take possession, and drive the said works, but they were not willing themselves to do so, because they considered it a losing business. Under these circumstances the defendants took possession, when the property was much out of repair and the dam carried away by a storm, and when it was necessary to expend large sums of their own money to put the works in operation before they could hope for any remuneration. We may ask, perhaps as well at this point as any other, what was then the understanding between the trustees and the other creditors as to the rent for the property possessed; was it then understood that the trustees should pay a fixed rent for the property, be liable for its use and occupation without regard to the returns of their business, or that they should simply be charged as trustees for all moneys they might receive over and above their actual expenditure.

The principles of law applicable to trustees are well settled. A trustee is never permitted to make any profit to himself in any of the concerns of his trust; on the other hand, he is not liable for any loss which occurs in the discharge of his duties, unless he has been guilty of

negligence, malversation, or fraud. 1 *Story's Eq.* § 465; 1 *Vesey* 32; *Wilkerson* v. *Stafford*, and cases in 1 *Vesey, supplement, p.* 9; 6 *Vesey, jun.* 488, *Caffrey* v. *Darbey;* 1 *Johns. Ch. R.* 27, *Green* v. *Winter;* 6 *Halst.* 145, *Voorhees* v. *Stoothoff.*

A trustee is not chargeable with more than he has received, unless in a case of gross negligence amounting to wilful default. 2 *Johns. Ch. R.* 1, *Osgood* v. *Franklin;* 1 *Vernon* 144; 1 *Vesey, jun.,* 193; 4 *Johns. Ch. R.* 619; 1 *Saxton* 295, *State Bank* v. *Marsh and Edgar;* 16 *Mass. R.* 221, *Barrett* v. *Joy.*

A trustee will not be held liable for estimated rents, when none were received, and the delay in selling the trust property was for want of purchasers. 7 *Grattan* 476, *Griffin* v. *McCauley.*

There is no pretence here of any fraud or negligence; on the contrary, it appears that the trustees were skilful and energetic men, and did the best that circumstances and the precarious state of the iron business permitted: and yet, in a few years, so far from making money, they sunk over one hundred thousand dollars, as appears by their accounts, the correctness of which is not contested. Can the creditors, then, whose immediate trustees the defendants are, insist, under the circumstances of this case, upon charging them with a regular annual rent? I think not. There is no contract that requires it, and no principle of law that would justify it; and no creditor has come forward to claim it, although their claims are still unliquidated. If, then, the immediate *cestui que trusts* cannot claim of the defendants rents, when none were received and none made, can the mere resulting *cestui que trusts,* who lie behind the unpaid creditors, make the claim in the hope that the property may reach them by thus paying off the creditors? I think not. The Hamburgh company and Edward E. Pratt and the other stockholder complainants have only a right of redemption, or resulting right to the property, after the $65,000 of debts are

2 L*

paid off; and they surely can have no greater power to charge the trustees than those who appointed them, and for whom they were acting. And this seems to have been the view of the complainants when they filed their bill, for they do not charge the defendants for any rent reserved by lease or agreement, or for any amount for the use and occupation of the premises, but for the profits that they had made, *viz.* "that defendants, after paying all expenses thereof, cleared out of the first blast upwards of fifteen thousand dollars, and out of the second blast more than ten thousand dollars, together a sum more than sufficient to pay all the debts of the Hamburgh company; that defendants had not accounted for "the proceeds and rents and profits," or for "the proceeds and profits of the said *blasts*, during the period they had possession of the said property;" that the defendants pretended that "they had not *realized* sufficient from the said property to pay off the said creditors," &c., the contrary whereof is charged to be true, and the prayer of the bill is for an account of "the rents, profits, and produce of said real estate;" and that, in taking such account, the defendants be charged with "interest for such *balances* as shall appear to have been in their hands from time to time;" and the evidence adduced by the complainants prior to the hearing before the master seems to be to sustain the same view of the case.

In 1848, after this cause had been decided in the Court of Appeals, the complainants applied to the Chancellor for the appointment of a receiver, which motion was refused by the Chancellor, on the ground that "the works are now in operation conducted by Edsall, a man experienced in the business, and of unquestioned responsibility." Why apply for a receiver if the property was already at a rent for its full value to a responsible man, or why refuse it on the ground that the trustee was "a man experienced in the business"? And the Chancellor asks, in conclusion, why appoint a receiver where there is no apprehension of danger from the property remaining in the use of the

trustee, and he has been ordered to account " for the rents that may *have been received.*" And again, pretty much the same view is taken by the Chancellor, in 1849, on refusing a motion to appoint a new trustee. According to the evidence, during all the time the defendants held the property, it was held for rent or sale, and no offer was ever made for either, although at a time when iron commanded the highest price, and when it was offered for sale for $22,500 to $25,000. Several witnesses testify that not only the Hamburgh iron works, but several other works in the same part of the country, were conducted, during the time the defendants occupied this property, at heavy loss, and in fact that pretty much all who had engaged in the manufacture of iron in New Jersey during that period had either become bankrupts or sustained heavy pecuniary losses, and that the annual value of iron works was little or nothing, if not absolutely worse than nothing; so that if I had any doubt of the correctness of the principle on which the master has placed his report, looking at the present depreciated value of the property, the large amount of debts unpaid, the small *quantum meruit* return that could arise from a different principle of accounting, the satisfaction of the creditors, who are the immediate *cestui que trusts*, I should hesitate to send this matter back to the master without some stipulation on the complainants to pay any deficiency that might eventually be coming to the creditors of the company; for if we charge the trustees the heavy rent of $2500 a year for the ten years they occupied the premises, and estimate their present value as high as $25,000, there will still be several thousand dollars coming to the creditors beyond the amount of rent and value, and of course that much short of reaching the complainants. But from the whole case, I entertain no doubt of the correctness of the principle adopted by the master; and contrary to my first impression, I am constrained to recommend to the Chancellor to overrule the exceptions and confirm the report.

The case was argued in the Court of Appeals by

*William Pennington*, for appellants.

*Robert Hamilton*, for respondents.

The opinion of the court was delivered by

OGDEN, J.    This is a suit brought by the Hamburgh Manufacturing Company, Joseph B. Nones, Daniel Jones, and Elias Freeman, who have survived Edward W. Pratt, against Joseph E. Edsall, who has survived Elias L'Homedieu, trustee, Jonathan Whitaker, and others, creditors of the Hamburgh Manufacturing Company.

I have thus mentioned many of the names of the parties respondents, and all the names of the parties appellants, that the character of the case may be the better understood.

This is an appeal from an interlocutory decree, taken by parties who filed the original bill.  The defendants, Joseph E. Edsall, and Elias L'Homedieu, who died after the first hearing in the cause was had, were decreed by the Chancellor to be trustees of certain property held and possessed by them, as well for the other defendants in this cause who were creditors of the Hamburgh Manufacturing Company, as for Edward W. Pratt, Joseph Nones, David Jones, and Elias Freeman, who derived their rights from said Pratt, creditor of and principal stockholder in the Hamburgh Manufacturing Company, at and after the time of his taking the benefit of the insolvent laws of this state, and also for the Hamburgh Manufacturing Company, a reference was ordered to a master "to take an account of the personal property taken possession of by the said L'Homedieu and Edsall under the said trust, and of all other the personal property, being the proceeds and profits of the said real estate and personal estate, or purchased with the proceeds or profits thereof, and of the rents, issues, and profits thereof, and of the rents, issues, profits, and produce of

Hamburgh Manufacturing Co. *v.* Edsall.

the said real estate, as well of the Clinton Manufacturing Company as of the Hamburgh Manufacturing Company, which have been possessed or received by the defendants, L'Homedieu and Edsall, or either of them, or by any other person or persons, by their or either of their order, or for their or either of their use."

Mr. Gifford, who was the designated master, in stating his account reported, among other things, as follows : " In making my report respecting the several matters, I have considered the said Edsall, by virtue of the conveyance or assignment of said L'Homedieu to him, and by having survived said L'Homedieu, to have acted as a trustee for said creditors, and, as such trustee, acting as a trustee for said creditors, accountable for any rents and profits that may have come to his hands, but not accountable for loss or damage, or for use or occupation of the premises." The complainants filed divers exceptions to the report, which exceptions were argued before a master, sitting in the place of the Chancellor. On the 24th of February, 1858, the Chancellor, being thus advised by the master, who heard and considered the exceptions, overruled all the exceptions, and decreed that the report of the master, Gifford, be ratified and confirmed with costs.

The complainants have appealed from this interlocutory decree, and in their petition of appeal they set forth that the decree is erroneous, and should be set aside; that the exceptions should be sustained, and the cause be referred back to a master to restate the account upon new principles, suggested and embraced in the exceptions to the report.

The appeal has been argued by the counsel for the complainants, upon the grounds that the master should have charged Edsall with the wood cut upon the premises, and consumed in the business carried on there after June, 1839, also with the ore taken out of the mine upon the Clinton company's tract, and also with an annual

rent for the trust property, during· the time it was occupied after the sale to L'Homedieu by the sheriff of Sussex county, to wit, after June, 1839, or with some of those items.

This bill, the answers, and the testimony taken before the first hearing was had, are fully set out in 1 *Halst. Ch. Rep.* 249 and 658; and the matters are further considered in 3 *Halst. Ch. Rep.* 298, and in 4 *Halst. Ch. Rep.* 141, to which books reference may here be made for the particulars of the whole controversy between these parties.

The only points discussed before this court are those which have just been stated; and if they have not been established on good grounds for an appeal, the decree must be affirmed. The whole equity of the complainants arising out of an agreement entered into between L'-Homedieu and creditors of the Hamburgh Manufacturing Company are particularly set out in the bill of complaint. The property was bid in by him, in virtue of that agreement, at a sheriff's sale, made on the day the agreement was executed, by virtue of sundry executions against the Hamburgh Manufacturing Company in his hands; and the Chancellor has decreed that the title was held, under that sale, in trust for all parties then interested in the property, both creditors and stockholders. It is true that Edsall and L'Homedieu took possession of the property, and cut some wood upon it, and dug ore out of the Clinton company's mine, which materials were consumed upon the premises in carrying on the furnace by them for several years; but as Edsall and L'Homedieu, in the eye of the court, were trustees prosecuting the business for the benefit of the *cestui que trust*, they cannot be charged with any rents, profits, or products which have not been received and made, nor can they, or either of them, be held in the light of tenants, and thus be made responsible individually for use and occupation. They cannot at the same time be trustees, conducting the

business as such, and also be tenants accountable to themselves for the use of the property thus employed. The trust was different in its nature from that which characterizes the use and control of the property of infants and *femes covert*.

Its object was the making of an honest effort to apply the property to the best interests of the parties concerned ; and as no pretence has been made, in proof or by allegation, that either of the trustees has been guilty of negligence, malversation, or fraud, they cannot be charged with more than they have received, or after two and a half years' possession under the trust, can they be converted into tenants chargeable with an annual rent, because that mode of settling the account might prove more beneficial for the *cestui que trusts*. The trustees did the best that they could do under the precarious state of the iron interests ; and it is manifest that Edsall, in the effort, has sustained a very heavy loss, for which he can have no possible remuneration.

Although L'Homedieu, up to the period of his death, and Colonel Edsall, as his survivor, occupied and controlled the property under such circumstances as should subject each of them to an account for his stewardship, yet, as such trustees, they were agents for the *cestui que trusts*, and in accounting were responsible only for the rents received, the issues realized upon, and the profits made. The principle of accounting in this case adopted by the master was equitable and just, and the decree of the Chancellor must be affirmed with costs.

Decree affirmed by the following vote :

*For affirmance*—Judges COMBS, RISLEY, VALENTINE, CORNELISON, OGDEN, SWAIN, RYERSON, WOOD.

*For reversal*—None.