JOHN SIME *et als.*, APPELLANTS, *v.* HENRY C. HOWARD *et al.*, RESPONDENTS.

DECLARATION OF TRUST AS TO LAND MUST BE IN WRITING. Under Section 55 of the statute concerning conveyances (Statutes of 1861,    ) a declaration of trust as to land must be by deed or conveyance in writing, subscribed by the party declaring the same, or by his lawful agent, thereunto authorized by writing.

DECLARATION OF TRUST DOES NOT REQUIRE STAMP. A mere declaration in writing that the person making it holds land conveyed to him in trust for another is not such a conveyance or instrument as requires either a United States or a State revenue stamp.

DECLARATION OF TRUST MAY BE MADE AT ANY TIME. A valid declaration of trust as to lands held for the use of another may be made at any time, and does not necessarily have to be made at the time of the creation of the trust.

DECLARATION OF TRUST AS EVIDENCE. Where certain land, deeded by one person to another in trust to convey back a portion of it on request, was by the trustee mortgaged, and afterwards, on a foreclosure suit being brought, the trustee executed a declaration in writing of the trust: *Held*, that such declaration was valid and effectual in proof of the trust; that it was properly admitted in evidence as such; and that the trust took precedence of the claims of all who did not occupy the position of *bona fide* purchasers for value without notice.

EQUITIES OF CESTUIS QUE TRUST. Where there is a purchase of real estate from the legal owner and no consideration is paid, or where the property passes in payment of or as a security for a pre-existing debt, the grantee takes subject to all existent equities against the grantor.

APPEAL from the District Court of the First Judicial District, Storey County.

This action was originally brought by John Sime, B. F. Hastings,. and Joseph M. Douglass, against Henry C. Howard to foreclose· the mortgage referred to in the opinion. The complaint was afterwards amended by making William R. Armstrong a party defendant, and in other respects.

The plaintiffs appealed from so much of the decree as adjudged that Armstrong, since April 27, 1863, had been and was the equitable owner of one moiety of the mortgaged premises; and so much of the decree as ordered a sale of the premises to be subject to all the rights of Armstrong as *cestui que trust* in one-fourth part of

the entire premises; and so much of the decree as failed to bar Armstrong of all right, interest, and equity of redemption in the premises; and the decree for costs in favor of Armstrong, and the failure of the decree to require payment in gold coin.

*Williams and Bixler*, for Appellants.

## I.

The same Legislature which enacted that all trust estates in land not created by act or operation of law should be created or declared by " conveyance " in writing, also enacted that all " conveyances " of land should be stamped. The term " conveyance " has not different meanings in the two Acts. Therefore, one of two things must inevitably follow: either the instrument introduced by the defendant is not a conveyance, and therefore does not comply with the requirements of Section 55 of the Act of Conveyance, or is a conveyance as required by that section, and is void for want of a stamp. . (Harrison's Digest, Vol. V, Supplement, top page 1521, Title " Revenue "; Id. Vol. VII, Supplement, Vol. III, page 1436, Title " Revenue.")

## II.

It is conceded that a writing is necessary to enable one to maintain a trust in the Courts; but the dispute between parties in this case relates to the point of time, with relation to the writing, when the trust has such an existence as will be recognized by the law. The defendant claims that a writing can be so shaped as to relate back to the time when a parol agreement of trust over land was made, and thereby make such parol agreement binding, and the trust valid *from the date* of the *parol* agreement; while we claim that a trust can only exist by law from the time of the execution and delivery of the writing creating or declaring it. The *point* in controversy relates to the time when the writing must be executed to make a trust.

Defendants say that the expression " declaration of trust," of itself, denotes a previous existing agreement resting in parol, and therefore argue that a trust can legally exist in parol. The same argument would do away with all writing required by the Statute

of Frauds.   A deed imports a previous `parol contract or agreement of sale; and yet no one can say that because of that fact a parol agreement of sale can be enforced, or if followed up by a deed, that the conveyance relates back and takes effect from the date of the parol agreement.   Both kinds of instrument import a previous parol agreement making their execution necessary, but no right vests until the instrument is executed.   To give greater effect to a declaration of trust than to a deed would be to simply permit a thing to be done indirectly which could not be done directly.

A declaration of trust made at any time might be enforced between the parties thereto; but we claim that the trust has no legal existence until the writing is executed, holding that the previous parol agreement or transaction upon which it is based is only to be regarded as the *consideration* for the writing.   All the money for which the mortgage was given was advanced within a few days of and up to the time of its execution.   Howard then stood as the owner of the property, and was so dealt with by the plaintiffs; and it is natural to conclude that they gave him credit upon the faith of his being the owner.   In the commercial world men obtain credit upon their wealth and the value of their visible property.   Besides, a part of the consideration was advanced at the time the mortgage was executed. Again: time was given for the payment of the whole debt; or, to be more accurate in expression, there was an extension of payment; and lastly, by taking the mortgage, the plaintiffs deprived themselves of the remedy by attachment against any other property which Howard may have had.

Can it be said that plaintiffs did not give up any security, or divest themselves of any right, or place themselves in a worse situation than they would have been in if they had received notice of the claimed prior equitable title?   Yet all that must be said to hold appellants not *bona fide* purchasers for a valuable consideration. (*Dickerson* v. *Tillinghast*, 4 Paige, 221; *Bayley* v. *Greenleaf*, 7 Wheaton, 51.)

### III.

A correction of the judgment should be made, also, so as to give the plaintiffs gold coin.

*Mesick and Seely*, for Respondents.

I.

The law refuses its aid to enforce agreements creating trusts or charges upon lands, when they rest altogether in parol; not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. But when a person who has received the title to lands purchased for the benefit of another, although without having declared the fact in writing, recognizes and fulfills the trust, it is not the duty of this Court to deny its existence. The trustee may admit the facts in an action, dispense with proof, and thus authorize the Court to establish and enforce the rights of the *cestui que trust*. If he does not plead the statute, he waives its protection.

Whether the trustee executes or only admits the trust, he supplies the defects in the proof of the original equities, and establishes not merely that his title is, but that it always has been, subject to these equities. (Brown on Statute of Frauds, Secs. 498, 499, and cases cited in notes; Story's Eq. Jur., Secs. 754–757; *Spurrier* v. *Fitzgerald*, 6 Ves. 548; *Howard* v. *Sexton*, 4 Comstock, 157.)

II.

The *declaration* of trust from Howard to Armstrong, of May 14th, 1868, was, within the meaning of Section 55 of our Statute of Frauds, clearly and legally proved, and established the trust in question as having existed from the 27th of April, 1863.

If every trust in land must have a written creation, of what possible use could be a written declaration of trust as distinguished from the instrument of creation? Or, if a declaration of trust is not distinguishable from a creation, why are both terms used in all the statutes upon the subject of trust? And if a declaration of trust can establish the trust only from the date of its being made, wherein does it differ, then, from a creation of trust? But we are not left to inference for determining the meaning of the statute. The terms used and the acts indicated have been assigned a settled meaning and office by the Courts and understanding of the profession. (See various statutes in Appendix to Brown on Statutes of

Frauds; Bouvier's Law Dictionary, word "Declaration"; Dart on Vendors and Purchasers, 434; *Wright* v. *Douglas,* 3 Selden, 564; *Barrell* v. *Joy,* 16 Mass. 221.)

It cannot be doubted that the office and effect of such an instrument, under the Statute of 29 Charles II, and other statutes of similar terms and like meaning, is to establish and make legal evidence by writing of pre-existing facts, agreements and interests previously resting in parol, and not capable of proof without such writing, in a Court of justice; and it is equally true that its effect is to relate back so as to establish for all legal purposes the existence of those facts, agreements, and interests at the date when they actually arose by parol, and to give them the same vitality and force as though their creation had been in writing.   It is not easy to conceive how or why this office and effect of a declaration of trust has been changed by our Statute of Frauds.   There is nothing in the language of the statute indicating such a change, and no reason has been assigned for it by the appellants except such as might have been urged against the meaning given by the Courts generally in England and America to the Statute of 29 Charles II, and other statutes of similar import.   (*Jenkins* v. *Eldridge,* 3 Story, 102; *Jaques* v. *Hall,* 3 Gray, 194; *Walker* v. *Locke,* 5 Cushing, 90; 2 Washburn on Real Property, Book 2, Sec. 3; *Reid* v. *Fitch,* 11 Barb. 399; *Wright* v. *Douglass,* 3 Selden, 564; *Siemon* v. *Austin,* 33 Barb. 9; *Hunter* v. ————, 2 W. & M., 168; *O'Neal* v. *Caldwell,* 3 Cr. C. C. 312; *White* v. *Fitzgerald,* 19 Wis. 480; *Bragg* v. *Paulk,* 42 Maine, 510.)

The authorities cited by plaintiff do not establish the contrary. None of them are in point, unless it be Willard's Equity Jurisprudence, and if that means what plaintiff asserts it does, it is not only unsupported by authority, but is contradicted by the author himself in his judicial capacity, in this case of *Reid* v. *Fitch,* as we have shown.   The case of *Fusier* v. *Sneath,* (3 Nev. 126) does not controvert but favors our position, for it only says that the statute does not "permit a trust in lands to be established by parol."

## III.

The plaintiffs are not *bona fide* purchasers of the property for

value without notice.    1st, because the plaintiffs' mortgage was taken upon a pre-existing debt, and not upon any new consideration parted with by them; 2d, prior to the taking of the mortgage, Hastings, one of the partners in the firm of Sime & Co., had knowledge and notice of Armstrong's claim to the property; 3d, the plaintiffs have not acquired the legal title, but only an equity in this property.    (4 Kent's Com. 181; 4 Paige, 221; 3 Paige, 431; 2 Lead. Cas. in Eq. 179.)

No amount of new consideration was proven or ascertained to have passed to the mortgagee or the plaintiffs to the mortgagor, for the mortgage.    This fact divests the plaintiffs of the character of *bona fide* purchasers for value, and of all right to protection as such against prior equities.    (*Dickerson* v. *Tillinghast*, 4 Paige, 215; *Reid* v. *Fitch*, 11 Barb. 408; *Powell* v. *Jeffries*, 4 Scammon, 387; *Coddington* v. *Bay*, 20 Johnson, 637; *Morse* v. *Godfrey*, 3 Story, 364; *Rowan* v. *Adams*, 1 Smedes & M. Ch. 45; *Clark* v. *Flint*, 22 Pick. 243; *Jackson* v. *Myers*, 11 Wend. 533; *Donaldson* v. *The Bank of Cape Fear*, 1 Dev. Ch. 103; *Jewett* v. *Palmer*, 7 John. Ch. 65; Story's Eq. Jurisp. § 64; Story's Eq. Pl. § 604.)

## IV.

The declaration of trust did not require the stamps.    The stamp laws do not require all deeds or indentures to be stamped, but only conveyances.    This is not a conveyance, but only an instrument of acknowledgment, or recognition, of a pre-existing fact and interest. Its office is only such as at common law was performed by a parol statement, and under the English statute of frauds, and that of most of the States, by a mere memorandum signed or unsigned, or letter of the party to be charged, or answer in Court, etc.    No policy of the law requiring instruments to be stamped can reach this declaration any more than it would a written defeasance to a deed of conveyance, absolute on its face, but intended as a mortgage.    The stamp law will not be extended by implication beyond its letter and spirit.

[In addition to the foregoing points counsel made several others which, however, did not become material in the decision of the

cause. They also discussed very fully the various authorities cited by the respondents and referred to in the opinion.]

By the Court, WHITMAN, J.

This action was brought by John Sime & Co., a banking firm, in the District Court of the First Judicial District, to foreclose a mortgage given by H. C. Howard—W. R. Armstrong being made codefendant, by reason of some supposed interest in the mortgaged property. He and Howard unite in an answer, averring among other defenses that Howard held one-half of the premises in trust for Armstrong. The proof was, that on the 27th of April, 1863, Armstrong and wife conveyed the premises to Howard, under a verbal contract that on demand Howard should reconvey one-half thereof. The title stood in Howard at the date of the execution of the mortgage in suit. Upon the trial the following written instrument was offered in evidence:

" To all to whom these presents shall come, H. C. Howard, of the City and County of San Francisco, State of California, sends greeting.

" Whereas William Riley Armstrong, and his wife Levantia, as of the County of Lyon, and Territory of Nevada, as parties of the first part, on the twenty-seventh day of April, A.D. one thousand eight hundred and sixty-three, by their deed of that date conveyed to me, H. C. Howard, all the undivided equal one-half ($\frac{1}{2}$) of a certain hotel, bar-room, furniture, and fixtures belonging thereto, with a spring of water thereto attached, situated at or near a place in said County of Lyon called the Devil's Gate; also a like undivided one-half ($\frac{1}{2}$) interest in and to a certain toll-road, or turnpike, known as the Devil's Gate Toll-road, lying near or west of a place in said county called ' Chalk Hills,' running between Carson and Silver Cities, and extending to Gold Hill in Storey County; also an undivided one-half of the Johnstown Branch of said road, leading down Gold Hill Cañon to Johnstown; also an undivided one-half of all franchises belonging thereto; also an undivided one-half of all rights thereunto granted to Wm. Sweryhut, and D. H. Haskell, by the County Court of Carson County, Utah Territory, by a charter for a wagon road from Dutch Nick's to

Virginia City, with a branch from Silver City through Johnstown to Chinatown; also an undivided one-half of all franchises heretofore granted to Armstrong and Roberts, or their predecessors in interest, by any Act or Acts of the Legislature of the State of Nevada, relating to said road, or of any of its branches; also a like interest in all the improvements, rights, franchises, and privileges in any wise to said toll-road and hotel property belonging or in any respect appertaining, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and all the estate right, title, interest, easements, franchises, privileges, property, possession, claim, and demand, whatsoever, as well in law as in equity of the said parties of the first part of, in, or to the above described premises, and every part thereof, with appurtenances.

"Now know ye that I, the said H. C. Howard, do hereby acknowledge and declare that the said deed and conveyance were and are made to me as to one moiety of the estate therein and thereby conveyed, that is to say, as to the undivided one-fourth of all the property, premises, rights, franchises, and things therein mentioned, only in trust and confidence, and to the intent that I, the said H. C. Howard, should, upon the request of the said W. R. Armstrong, his executors, administrators, or assigns, assign and convey the said moiety or undivided quarter to him, the said W. R. Armstrong, his heirs, executors, administrators, or assigns, and that I do not and never did claim to have any right or interest in the said moiety or quarter, or any part thereof, by the said conveyance so made to me, or otherwise, to my own use or benefit, but only to and for the sole use and benefit of the said W. R. Armstrong, his heirs, executors, administrators, or assigns. In witness whereof, I, the said H. C. Howard, have hereunto set my hand and seal, this 14th day of May, A.D. 1868.

> "H. C. HOWARD." [SEAL.]

The reception of this paper in evidence was objected to on the ground: First—"That the same was not stamped with United States or State stamps, for denoting the duty thereon, as required

by law." Second—" That it was executed subsequent to the commencement of this suit, and was therefore irrelevant and incompetent." These objections were overruled, the evidence admitted, exception taken; subsequently decree was rendered for the foreclosure of the mortgage upon one-half only of the property.

From this decree and the further order of the District Court denying motion for new trial, an appeal is taken. There was much other matter presented to the District Court, some of which it is unnecessary to notice, and other becomes material only after decision upon the ruling set forth. The paper writing was offered in proof of compliance with the provisions of the fifty-fifth section of the statute of the State of Nevada adopted from the Territory entitled "An Act concerning Conveyances," approved November 5th, 1861, as follows :   " No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Under the section quoted, a declaration of a trust must be by " deed or conveyance in writing subscribed by the party declaring the same, or by his lawful agent thereunto authorized by writing." To meet such requirement, the paper offered must come within the definition of a deed, or a conveyance.

It is not a conveyance, because it conveys nothing, nor does it meet the statutory definition of a writing " by which any estate or interest in lands is created, aliened, assigned or surrendered ;" but it is a deed in the enlarged sense of that word, being " a writing sealed and delivered by the parties," (2 Bl. Com. 295) and does not come within the designation of instruments requiring a stamp duty; as they are only any " conveyance, deed, instrument or writing, whereby lands, tenements or other realty sold, shall be conveyed, the actual consideration of which does not exceed," etc.; *    *   " trust deed made to secure a debt ;" " trust deed conveying an estate to uses," (Statutes Nev., 1864–5, pp. 321–2) or " conveyance deed, instrument or writing, whereby any lands, tenements

or other' realty sold, shall be granted, assigned or vested in the purchaser or purchasers, or any other person or persons, by his, her or their direction, where the consideration or value does not exceed," etc.   *   *   (Laws U. S. 1867.)

The object of the instrument in question is not to accomplish any of the purposes defined in the foregoing citations, but to declare under the solemnity of a seal a pre-existing state of facts which could not without the assistance of such formal declaration be orally proved.

The first objection then is not well taken.

The second objection requires a somewhat extended and careful examination of the fifty-fifth section of the "Act concerning Conveyances," before referred to.   This and similar statutory provisions of many of these United States, seem to have been founded upon and intended as a substitute for the seventh, eighth and ninth sections of 29 Car. II, Ch. 3, as follows:   Section 7.   "All declarations or creations of trusts, or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect."   Section 8.   " Provided, always, that where any conveyance shall be made of any lands or tenements, by which a trust or confidence shall or may arise or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this statute had not been made ; anything hereinbefore contained to the contrary notwithstanding."   Section 9.   "All grants or assignments of any trust or confidence shall likewise be in writing, signed by the party granting or assigning the same, or by such last will or devise, or else shall likewise be utterly void and of none effect."   Whether these State statutes are substantially the same with that of Charles Second, will be hereafter considered ; but to a proper consideration a previous understanding of the judicial exposition of the English statute is necessary.   Says Lewin, in his treatise on the Law of Trusts and Trustees, 30, Ch. 4, Sec 2 : " The principal point to be noticed is, that trusts are not necessarily

to be declared in writing, but only to be manifested and proved by writing ; for, if there be written evidence of the existence of such a trust, the danger of parol declaration against which the statute was directed, is effectually removed.   It may be questioned whether the Act did not intend that the declaration itself should be in writing, for the ninth section enacts that ' all grants and assignments of any trusts or confidence shall likewise be in writing signed by the party granting or assigning the same, or by such last will and devise,' (he might have added and also provides " or else shall likewise be utterly void and of none effect"); but, whatever may have been the actual intention of the legislature, the construction put upon the clause in practice is now firmly established." " The statute will be satisfied if the trust can be manifested by any subsequent acknowledgment of the trustee, as by an express declaration by him, or any memorandum to that effect, or by a letter under his hand, by his answer in chancery, or by a recital in a bond, or deed, etc. ; and the trust, however late the proof, takes effect from the creation of the trust."   (See also Cruise Dig. Vol. 1, p. 421 ; Sanders' Uses and Trusts, Vol. 1, p. 343 ; Hill on Trustees, p. 87 ; Adams' Eq., side page 28.)  To the support of this text many cases are cited.   American text writers adopt the same interpretation.   (Kent's Com. Vol. 4, p. 343, 10th Ed.; Story's Eq. Jurisp. Vol. 2, Sec. 972 ; Willard's Eq. p. 413 ; Bouvier's Inst. Am. Law, Vol. 2, Sec. 1902 ; Washburn on Real Property, Vol. 2, p. 191.) The American decisions follow in the same course. (*Barrell* v. *Joy*, 16 Mass. 221 ; *Steere* v. *Steere*, 5 Johns. Ch. 1 ; *Reed* v. *Reed*, 12 Rich. Eq. R. S. C. 213 ; *Raybold* v. *Raybold*, 20 Penn. St. 308 ;) so that no doubt remains as to the received construction of the statute of Charles Second, either in England or America.   It will be seen that the Courts held not only that the creation or declaration, etc., of a trust need not be in writing, but went very far in admitting informal writings in manifestation or proof, hence the modifications of the English statute by State legislation, the object of which probably was to provide that the powers or duties mentioned in the seventh and ninth sections of 29 Car. II, Ch. 3, should not only be exercised by instrument in writing, but that such writing should be of an explicit and solemn

character, referring directly to the special matter in hand; but still the statute as modified remained as before a statute of proof. So far as decisions have been made upon this subject, they sustain this view as will presently be shown. Such seems to be the natural conclusion. It can hardly be said that any of the modified statutes are more mandatory to the point, that the instrument touching the trust should itself be in writing, than the seventh and ninth sections 29 Car. II, Ch. 3, read and construed together, as they were evidently intended to be; yet under these sections Courts had held for so long a period that the instrument itself need not be in writing, so that it was thus manifested, or proved, that legislation was the only means of escape from such rule of decision, which also allowed the admission of loose proofs, apparently not contemplated by the statute. This danger is obviated by the modified statutes; but it will be observed that all such statutes make specification of different exercises of power or duty touching trusts; that of the State of Nevada speaks of creation, grant, assignment, surrender, and declaration. These words are not synonymous terms; hence it follows that the object of the statute is accomplished if either be in writing by deed or conveyance, and duly signed, according to the particular purpose to be attained by the individual instrument. To create a trust, for instance, is to do one act, and for one purpose. To declare a trust, to do another, and for another purpose. To create is to call into existence. To declare is to make clear a pre-existence. A declaration of trust, says Bouvier, is "the act by which an individual acknowledges that a property, the title of which he holds, does in fact belong to another, for whose use he holds the same. The instrument in which the acknowledgment is made is also called a declaration of trust." This view is sustained by the authorities, both text writers, with the exception of Judge Willard, and by the Courts without exception as appears so far as in the consideration of this case access could be had to the reports. (Bouvier on Stat. Frauds, Sec. 144; Story Eq. Jurisp. Sec. 972; Wash. Real Prop. p. 191; Hill on Trustees, Am. notes, p. 86, note 2; Bouv. Inst. Vol. 2, Sec. 1902.) In *Jenkins* v. *Eldridge*, (3 Story, C. C. R. 181) Judge Story uses this language: "My opinion has proceeded upon the ground

that there is no substantial difference between the Statute of Frauds of Massachusetts, either under the Act of 1783, Ch. 37, Sec. 3, or the Revised Statutes of 1835, Ch. 59, Sec. 31, and the Statute of 29 Car. II, Ch. 3, on the subject of trusts; and such is the conclusion to which I have arrived, upon the examination of these statutes." So far as the present question is involved, the language of the Massachusetts statute of 1835 is substantially that of Nevada; it reads thus: Sec. 30. "No trust concerning lands, excepting such as may arise or result by implication of law, shall be created or declared, unless by instrument in writing, signed by the party creating or declaring the same, or by his attorney." The statute of Wisconsin is the same as that of Nevada. (R. S. Ch. 106, Sec. 6.) In *White, adm'r., etc.,* v. *Fitzgerald, adm'r., etc., et als.,* it was sought to enforce a trust in favor of John White, (as the suit was originally brought) as against the administrator, and heirs at law, of Garet M. Fitzgerald, and one Mullen, grantor of Fitzgerald, as to property purchased in 1854, for joint account of White & Fitzgerald, the deed of which was taken in the name of Fitzgerald. There was an oral agreement between W. and F. as to the purchase, and it was claimed on behalf of W. that a certain written instrument, executed by F. in 1857, was a declaration of trust. The Circuit Judge found for defendants. On appeal counsel distinctly made the point that the statute of New York, from which that of Wisconsin was taken, was intended "to abridge and simplify the language of 29 Car. II, Ch. 3, and not to abridge the means of declaring or evidencing the creation or existence of a trust." The Court held that the declaration was good, unless in the time which had elapsed before it was made Fitzgerald had transferred the land to innocent *bona fide* purchasers, and the decree of the Circuit Court was reversed. (*White* v. *Fitzgerald,* 19 Wis. p. 489.) In Maine, where the statute prior to 1841 provided, as to an express trust, that it "must be created and manifested by some writing, signed by the party creating · or declaring it, or by his attorney." (R. S. Ch. 91, Sec. 31.) It was held in *Brown* v. *Lunt,* (37 Maine R. p. 423) that under such section "a parol trust may exist, and may be executed voluntarily."

In 1841 the statute was altered to read thus: "There can be no trust concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing, signed by the party, or his attorney." (R. S. Ch. 91, Sec. 11.) Discussing that section in *Bragg* v. *Paulk*, (42 Maine, 502) Appleton, Justice, delivering the opinion of the Court, concurred in by four of the six other Judges, says: "But it is entirely immaterial whether the trust is evidenced by a writing made before or after the purchase. The written declaration of a trust, parol in its origin, is as valid as if its creation had been by writing." The statute in New York is *verbatim* with that of Nevada. In *Reid* v. *Fitch*, (33 Barb. 9) it was attempted to enforce a trust against a judgment creditor of the trustee, upon the following state of facts: In 1847 the parents of Mary Siemon furnished money to one Youngs to buy an estate, upon the understanding that he should hold it for the benefit of Mary. Youngs took the deed in his own name. In 1849 judgment was recovered against Youngs. In May, 1853, Youngs conveyed to Mary the land. On the 25th of June, 1853, the property was sold, on execution against Youngs, and Austin became the purchaser. Pronouncing the opinion of the Court, Emott, J., says: "There is no doubt that Youngs was morally bound to surrender and convey these premises to the plaintiff; that she was clearly and exclusively entitled to them; and that neither the original agreement nor its execution, by placing the legal title in her, was a fraud upon any one. If this agreement or trust had been expressed in writing, it would evidently have been valid and effectual, at least to protect the plaintiff from the creditors of Youngs. Now if the Statute of Frauds would have been in the way of the subjection of this property to the trust, if Youngs had never recognized or acted upon it, that was a defect in the evidence of the trust, and not in the nature of the trust itself. The law refuses its aid to enforce agreements creating trusts or charges upon lands, when they rest altogether in parol, not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. When a person who has received the title to lands purchased for the benefit of another, although without having declared the fact in writing, recognizes and fulfills the trust,

it is not the duty of a Court to deny its existence.   The trustee may admit the facts in an action, dispense with proof, and thus authorize the Court to establish and enforce the rights of the *cestui que trust*.   If he does not plead the statute he waives its protection.   If he fulfills the trust by conveying the property to the true owner, there is no rule in equity which will impeach the title thus acquired."

Whether the trustee executes or only admits the trusts, he supplies the defects in the proof of the original equities, and establishes not merely that his title is, but that it always has been, subject to these equities.   If the deed from Youngs to the plaintiff cannot be upheld against the antecedent judgment against Youngs, it cannot be upheld against subsequent judgments, at least as to his debts then existing.   The only consideration for this deed is the original equity of the plaintiff.   But for that it is a voluntary conveyance, a gift from Youngs to plaintiff, and so liable to impeachment by the creditors of the former whenever their judgments are recovered. But if it be sustained by the equity of the plaintiff, that was not created by the deed, nor at the time of the deed ; it was simply confessed by the deed as having always existed ; and being established it takes precedence at once of all general legal liens upon the estate of the trustee."   The plaintiff had decree, and upon appeal under the title of *Siemon* v. *Schurck et als.* the case will be found in 29 N. Y. 2 Tiffany, 598, where the decree was affirmed, Justice Hogeboom deciding the case upon other grounds, and Justice Davis approving the opinion of Justice Emott in addition to the reasons of Hogeboom, J., the other Judges concurring without special opinion.

In *Wright* v. *Douglass*, (7 N. Y., 3 Selden, 564) the question was, whether an attaching creditor against the Towanda Bank should hold as against the grantee of the bank and one who held, or appeared to hold, the title by deed absolute, from other source when the attachment was levied.

In a deed made to the defendant by the Towanda Bank, and another executed a month after the attachment, and four years after the apparent investiture of title in the co-grantor with the bank was a recital, claimed by the attaching creditor to be a declaration of trust.   Delivering the opinion of the Court, Ruggles, C. J.,

though holding that upon the special finding of the jury the presumption must be that the trust was created or declared by deed or conveyance as required by the statute, proceeds to further investigation and says : " But if we are at liberty to look into the other facts found by the jury for the purpose of ascertaining whether Mr. Dana took the Sheriff's certificate and the deed from Dennis as a passive trustee of the Towanda Bank, we find what in my opinion is abundantly sufficient evidence of the fact. I allude to the deed executed by Mr. Dana and the Towanda Bank to the defendant, Douglass. In this deed it is distinctly recited that the premises in question had been conveyed to, and the title thereof vested in, Mr. Dana as the trustee and for the use of the Towanda Bank. To my mind this appears to be a clear and valid declaration of trust between the trustee and the beneficiary. Both were parties to the deed. This, according to my understanding of it, was not the creation of a new trust at the date of the last mentioned deed in 1843, but a solemn declaration that the trust had in fact existed from the time the premises were conveyed to Dana. These parties, Dana and the Towanda Bank, are bound by the declaration ; and so is Douglass the defendant. They were all parties to the deed containing it. It showed the relation in which in reality Dana and the Towanda Bank stood to each other from the beginning. It is of no importance that the object of that deed was to convey the title to Douglass. Nor is it of any consequence what effect the declaration had upon the title attempted to be conveyed by that deed. With that deed before their eyes, the jury could have found no other verdict than they did in relation to the trust on which Dana took the Sheriff's certificate and the deed from Dennis. It was a declaration of trust by a deed in writing, signed by the party declaring the same ; and this is all the statute requires. It is precisely the instrument the statute requires to show that the trustee was not the owner of the land by virtue of conveyances to him absolute on their face ; and this was evidently the reason why the Towanda Bank joined in the deed to Douglass. The statute prescribes no particular form by which the trust is to be created or declared. Under our former statute in relation to this subject, it was only necessary that the trust should be manifested in writing ;

and therefore letters from the trustee declaring the trust were suffi-
cient.   Such  is the law of England.   (Stat. 29 Car. II, Ch. 3,
Sec. 7.   *Forster* v. *Hale*, 3 Ves. Jun. 696.)

" Our present statute requires that the trust should be created or
declared by deed or conveyance in writing, subscribed by the party
creating or declaring the trust.   But it need not be done in the
form of a grant.   A declaration of trust is not a grant.   It may
be contained in the reciting part of a conveyance.   Such a recital
in an indenture is the solemn declaration of the existence of the
facts recited, and if the trustee and the *cestui que trust* are parties
to the conveyance, the trust is as well and effectually declared in
that form as any other."

Opposed to these decisions is the *dictum* of Judge Willard, in
his work on Equity Jurisprudence, page 414.   He says : " It was
evidently the intention of the Legislature to alter the former law,
and to require a writing in order to create, etc., the trust; and, to
give more solemnity to the transaction, they required the writing
to be subscribed by the party creating, etc., the trust, or by his
lawful agent, etc.   This is plain from a reference to the notes of
the revisers and to the decision of the Court of Errors in 1841
under a corresponding change of phraseology in the second title of
the same chapter.   The section must then be understood as requir-
ing the declaration creating the trust to be reduced to writing at
the time it was made, and to be subscribed by the party who thus
creates it."   As no authorities are cited, save as to the matter of
subscription, the deduction bears only the weight of the individual
authority of the writer.   However great that may be, it cannot
counter or overbalance the authorities before quoted.   Testing this
case by them, it follows that the District Court properly admitted
the written instrument of the 14th May ; that the second objection
thereto was not well taken ; that such instrument was a valid decla-
ration of trust, in compliance with the statute, and that a trust ex-
ists as so declared, which must take precedence of plaintiffs' mort-
gage to the extent of one-half the property described therein, unless
they are *bona fide* purchasers for a valuable consideration without
notice.   The question of notice does not arise in the view taken by
this Court of this case.   Are they then *bona fide* purchasers for a

32

valuable consideration ?   The District Court finds the following facts, which are pertinent to that inquiry : " In the month of September, A. D. 1867, the defendant Howard was authorized by said firm, through said B. F. Hastings, to ' overdraw' from the bank a certain amount of money.   Howard did so obtain money from the bank, and within a very few days thereafter, to wit, on or about the 17th day of said month of September, 1867, he was found to be indebted to the bank in an amount exceeding $14,000, but less than $15,000—the precise sum does not appear—upon the last mentioned date or the day following.   At all events, upon the 18th day of September, 1867, upon a conference had between the plaintiff John Sime and the defendant Howard, it was agreed be- tween those two parties that there should be placed upon the books of the bank a credit in favor of Howard for a sufficient amount of money to make up with the existing debt of Howard the sum of $15,000, upon Howard giving to Mr. Sime, for the benefit of the firm, a deed of conveyance, absolute in form, (to operate as a mort- gage) of the one-half interest of the property described in the com- plaint, for the securing of the repayment of said money so loaned. The money was so placed to the credit of Howard, and Howard thereupon made and executed, and upon the following day ac- knowledged the mortgage and delivered the same, as alleged in plaintiffs' complaint.

As neither the District Court nor the plaintiffs have shown any specific sum advanced contemporaneously with the execution of the mortgage, this Court cannot do so, and the whole sum must be re- garded as a debt precedent to the mortgage.   The rule of equity is, that where there is a purchase of real estate from the legal owner, and no consideration is paid, or the property passes in pay- ment of or as a security for a pre-existing debt, the grantee takes subject to all existent equities against the grantor. (*Powell* v. *Jeffries*, 4 Scam. 387 ; *Dickerson* v. *Tillinghast*, 4 Paige, 215 ; *Bragg* v. *Paulk*, 42 Maine, 502; *Merritt* v. *Northern R. R. Co.*, 12 Barb. 609 ; *Jewett* v. *Palmer*, 7 Johns. Ch. 64 ; *Jackson* v. *Myers*, 11 Wend. 535.)

As the declaration is sufficient under the statute, and plaintiffs under the rule quoted cannot be considered *bona fide* purchasers

for a valuable consideration, it follows that the District Court not only did not err, as objected by plaintiffs in admitting such declaration, but also that its subsequent decree was correct.   It is affirmed ; modified, however, so as to be for " gold coin of the United States of America."

JOHNSON, J., did not participate in the foregoing decision.